# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| RHONDA S. WILLIAMS, on behalf of herself and other similarly situated employees and all others who consent to become Plaintiffs, | ) ) ) ) | |
| | ) | Case No.   15-cv-1262 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MERLE PHARMACY, INC., CENTRAL ILLINOIS MEDICAL EQUIPMENT, INC., AND WILLIAM M. MARTIN, | ) ) ) | |
| Defendants. | ) ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss Certain Claims (Doc. 13). The Amended Complaint consists of nine counts alleging violations of the federal Fair Labor Standards Act, 29 U.S.C. § 207 *et. seq.* (the "FLSA") (Counts I and II), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et. seq.* (the "IMWL") (Counts III and IV), the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et. seq.* (the "IWPCA") (Counts V and VI), Illinois common law of retaliatory discharge (Count VII), the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1 *et. seq.* (the "IWA") (Count VIII), and the Illinois Adult Protective Services Act (the "APSA"), 320 Ill. Comp. Stat. 20/1 *et. seq.* (Count IX). Defendants assert in the instant motion that Counts II, V, VI, VII, VIII and IX should be dismissed under Rule 12(b)(6) because Plaintiff has failed to plead claims

for which relief can be granted. For the reasons stated below, Defendants' motion (Doc. 13) is granted in part and denied in part.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure[1] 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). "To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934–35 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (internal quotation marks omitted). "The complaint must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Id.* at 935 (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)) (internal

---

[1] These rules, and not state law, govern purely procedural matters in state cases tried in federal court, and apply to the state law claims pled in Counts V, VI, VII, VIII and IX. *See Brookshire v. Pennsylvania R. Co.*, 14 F.R.D. 154, 156 (N.D. Ohio 1953).

quotation marks omitted). "[A] plaintiff's claim need not be probable, only plausible." *Id.* "To meet this plausibility standard, the complaint must supply enough fact[s] to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Id.* (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted)).

## FACTUAL BACKGROUND[2]

Plaintiff was employed by Merle Pharmacy, Central Illinois Medical, and/or Martin (hereinafter "Defendants") from on or about November 2004 until July 29, 2014, when she was fired. During all relevant times, Plaintiff was an hourly employee. Neither she nor any of Defendants' other employees were salaried employees exempt from the overtime requirements of the FLSA or the IMWL.

During all relevant times, Defendants failed to provide Plaintiff with an itemized statement of deductions made from her wages for each pay period. Defendants also failed to keep and preserve accurate records of hours worked by Plaintiff and their other employees, including but not limited to the hours worked each day in each work week. During all relevant times, Defendants failed to keep and preserve accurate records of the number of vacation days earned by Plaintiff and their other employees each year and the dates on which vacation days were taken and paid. During the course of her employment, Plaintiff repeatedly requested that she be provided information regarding her wages and withholdings that should be contained on a paystub or equivalent document. Defendants

---

[2] As noted above, all well-pled facts must be construed in Plaintiff's favor when ruling on a Motion to Dismiss; so these background facts are drawn from the Amended Complaint. (Doc. 12).

repeatedly refused to provide Plaintiff with such documentation. Prior to her termination, Plaintiff repeatedly complained to Martin that she had not been appropriately paid for the hours she worked in excess of forty (40) hours per week.

Also prior to her termination, Plaintiff routinely delivered medication to an elderly customer of Defendants. The elderly customer was an adult with disabilities and/or was over the age of sixty. An attorney with a history of ethical violations was this elderly customer's attorney and held her Power of Attorney. He handled her financial affairs, including but not limited to paying for her healthcare from her personal funds.

In approximately late June 2014, Plaintiff delivered medication to this elderly customer. The elderly customer remarked that she was thankful that her insurance paid her bill for medications from Merle Pharmacy. Plaintiff informed the elderly customer that her insurance did not pay Merle Pharmacy for her medication, and that Defendants were not billing, and to her knowledge, had never billed, the elderly customer's insurance for her medications. The elderly customer stated that she was under the impression that billing occurred between Merle Pharmacy and her insurance, and that no one had previously told her that her insurance was not being billed by Merle Pharmacy for her medications. Plaintiff informed the elderly customer that each month Martin sends her attorney a bill for the full retail amount of her medications (thousands of dollars each month), and that her attorney paid the bills with checks drawn from the elderly customer's personal finances; and that if the elderly customer's insurance had been processed by the pharmacy for her medications, she would not pay as much for her

4

medications. The elderly customer asked if the attorney was stealing her money. Plaintiff responded that she could not answer that question. The elderly customer requested that Plaintiff investigate the arrangement between Defendants and her attorney to determine if she was being financially harmed by their billing arrangement.

Shortly thereafter, Plaintiff told the assistant pharmacy manager of Merle Pharmacy that she was concerned that the elderly client had insurance which was not being billed by the pharmacy for her medication, and instead the elderly client was paying out-of-pocket at higher cost. The assistant pharmacy manager told Plaintiff that Martin and the elderly client's attorney had an arrangement that was a "can of worms." Plaintiff told the assistant pharmacy manager that the arrangement did not make sense because the elderly customer's insurance premiums, co-pays and deductibles combined would cost less than what she currently pays out-of-pocket on a monthly basis. The assistant pharmacy manager told Plaintiff not to talk about it and to "leave it alone."

Thereafter, but prior to her termination, Plaintiff contacted the State's Attorneys' office and reported the potential financial exploitation of the elderly client. On or about July 28, 2014, Martin returned to Bloomington from being out of the country for several weeks. On July 29, 2014, Martin terminated Plaintiff's employment with Merle Pharmacy. Plaintiff alleges the termination was because she disclosed to the elderly customer that Martin and Merle Pharmacy were not billing her insurance for her medications and/or that the billing arrangement between Martin and her attorney may be financially harmful to her.

5

DISCUSSION

I.  **Count II: Violation of the Fair Labor Standards Act for Failure to Create and Maintain Accurate Records**

Plaintiff agrees that is no private cause of action allowed under the FLSA for the failure to create and maintain accurate records. Therefore, Count II is hereby dismissed with prejudice.

II.  **Count V: Violation of Illinois Wage Payment and Collection Act for Failure to Provide Itemized Payroll Information for Each Pay Period**

Plaintiff claims that Defendants violated the IWPCA, 820 Ill. Comp. Stat. §115/10, by failing to provide her and other members of her purported class itemized payroll information for each pay period worked. Defendants contend that although the statute requires such itemized payroll information, it only allows for the Department of Labor to enforce such requirements; private citizens have no private cause of action to remedy such failures.

So, we begin with reading the statute, which provides in relevant part:

It shall be the duty of the Department of Labor to inquire diligently for any violations of this Act, and to institute the actions for penalties herein provided, and to enforce generally the provisions of this Act. . . .

Nothing herein shall be construed to prevent any employee from making complaint or prosecuting his or her own claim for wages. Any employee aggrieved by a violation of this Act or any rule adopted under this Act may file suit in circuit court of Illinois, in the county where the alleged violation occurred or where any employee who is party to the action resides, without regard to exhaustion of any alternative administrative remedies provided in this Act. Actions may be brought by one or more employees for and on behalf of themselves and other employees similarly situated.

820 Ill. Comp. Stat. §115/11 (emphasis added).

6

The Court reads the statute to provide generally that it is the Department of Labor's responsibility to enforce the general provisions of the IWPCA but nothing within the statute can hinder a person from bringing his or her private cause of action for wages. Any person aggrieved by a violation of the statute or rules enacted under the statute may bring a suit without having to exhaust any administrative remedies provided by the statute.

There is no question that the statute provides a private cause of action for wages. Multiple courts have already found as much. *See, e.g., Aponte v. Nat'l Steel Serv. Ctr.*, 500 F. Supp. 198, 203-04 (N.D. Ill. 1980); *Nagel v. Gerald Dennen & Co.*, 650 N.E.2d 547, 552-53 (Ill. App. Ct. 1st Dist. 1995). However, no court seems to have yet to deal with the question of whether the statute authorizes a private cause of action for other ancillary IWPCA violations.

Defendants assert that a similar statute, the Illinois Minimum Wage Law (the "IMWL"), does not authorize private-suits for record-keeping violations. Although Defendants did not cite to an authority for their proposition, the Court has found a case that supports it. In *Nicholson v. UTi Worldwide, Inc.*, the district court found that "the private cause of action created by the IMWL does not authorize private suits for record-keeping violations." No. 3:09-CV-722-JPG-DGW, 2010 WL 551551, at *5 (S.D. Ill. Feb. 12, 2010). The *Nicholson* court stated its conclusion without mentioning its reasoning. Plaintiff has not addressed Defendants' contention regarding the IMWL in her opposition or sur-reply briefs.

The IMWL contains a record-keeping requirement, 820 Ill. Comp. Stat §105/8, just as the IWPCA does, 820 Ill. Comp. Stat §115/10. The structures of the

7

two statutes are different but both statutes contain language that it is "the duty of the Department of Labor to inquire diligently for any violations of this Act, and to institute the actions for penalties herein provided, and to enforce generally the provisions of this Act." 820 Ill. Comp. Stat §§ 105/11, 115/11. However, the IWPCA alone contains the phrase "[a]ny employee aggrieved by a violation of this Act or any rule adopted under this Act may file suit in circuit court of Illinois…." 820 Ill. Comp. Stat. §115/11. This additional language gives the Court reason to refrain from finding the IWPCA does not allow private causes of actions based on failures to provide employees with the information solely because another court found that similar private actions are not authorized under the IMWL.

Instead, the Court looks to the purpose of the statute and whether a private cause of action is consonant with such purpose. The IWPCA's purpose is to ensure employers pay Illinois employees the proper compensation due to them within a number of specific days following the pay period in which the compensation is earned. The requirement to furnish the proper information to the employees is nothing more than a prophylactic measure designed to support that primary purpose. There is no independent harm suffered by an employee who has not received the proper payroll information; instead such an employee is only harmed in an incidental fashion because it is her ability to prove the amount of compensation that is affected by a lack of proper payroll documentation. Moreover, the Court has reviewed the statute and has not identified any statutory penalty for failure to adequately keep and provide records to employees. *See generally* 820 Ill. Comp. Stat. 115/14. The absence of a statutory penalty for the failure to provide payroll

information leads the Court to conclude that it is unlikely the legislature thought such failure was an independent and redressable harm.

Illinois courts apply a more formal test in deciding whether to imply a private right of action. A private right of action will be implied if: "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18 (Ill. 1999).

The Court finds that the first three requirements are satisfied but not the fourth. As discussed above, the overall purpose of the statute is to prevent the injury of not being compensated what one is owed; not to prevent the amorphous and intangible injury suffered from being deprived of information. Moreover, it is not clear how a civil suit could redress the deprivation of payroll information, since this "injury" does not seem to be capable of being reduced to a monetary value.

Plaintiff contends that finding no private cause of action for the failure to provide itemized payroll information would render superfluous the sentence "Any employee aggrieved by a violation of this Act or any rule adopted under this Act may file suit in circuit court of Illinois…." The Court is of the opinion that her proposed reading would have the similar effect of rendering superfluous the preceding sentence, "Nothing herein shall be construed to prevent any employee from making complaint or prosecuting his or her own claim for wages." After all, the Illinois legislature would not need to single out a claim for wages as permissible

under the statute if it intended the very next sentence to convey the meaning that any and all violations of the statute, which would necessarily include legal actions for wages, could be pursued by employees in their own private legal actions.

The overwhelming meaning conveyed by the sentence—"Any employee aggrieved by a violation of this Act or any rule adopted under this Act may file suit in circuit court of Illinois, in the county where the alleged violation occurred or where any employee who is party to the action resides, without regard to exhaustion of any alternative administrative remedies provided in this Act."—is that an employee denied proper compensation may institute her own civil action for wages without having to go through any administrative rigmarole that would unnecessarily delay her securing her due compensation. Thus, this sentence absolves the employee from exhausting administrative remedies rather than bestowing broad private causes of action to individual employees under the statute.

Plaintiff's explanation for the sentence, "Nothing herein shall be construed to prevent any employee from making complaint or prosecuting his or her own claim for wages.", is that it simply means that employee complaints filed with the Department of Labor are limited to wage claims. (Doc. 19-1 at 2). The Court finds this argument to be specious because it ignores the phrase "prosecuting his or her own claim." The term "prosecute" has the primary meaning to commence and carry out a legal action. Black's Law Dictionary (9th ed. 2009). Moreover, it also ignores that the agency is specifically empowered to inquire diligently for any violations of the statute, to institute the actions for penalties therein provided, and to enforce generally the provisions of the statute. Thus, the logical extension of Plaintiff's

argument is that the Department of Labor cannot receive complaints from employees concerning their employers' failures to provide statutorily required payroll information. Obviously, such an outcome is incorrect in light of the Department's broad authority.

For all these reasons, the Court finds that the IWPCA does not provide for a private right of action for an employer's failure to provide its employees with itemized payroll information. Therefore, Count V of the Amended Complaint is dismissed, but with prejudice as there are no facts the Plaintiff can plead to gain relief under the IWPCA for failure to provide Plaintiff and other members of a proposed class itemized payroll information for each pay period.

## III.   Count VII: Illinois Common Law Retaliatory Discharge

Plaintiff alleges she was discharged in retaliation for reporting Defendants' activities to an elderly patient. (Doc. 12 at ¶69). She also alleged that prior to her termination she contacted the State's Attorneys' Office and reported the financial exploitation of the elderly patient. (Doc. 12 at ¶67). Although she did not state it explicitly, the clear inference of these paragraphs taken as a whole is that Defendants terminated Plaintiff for both actions. "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB*, 649 F.3d at 614.

The parties seem to be confused as to what are the pleading requirements for the common law claim of retaliatory discharge. The pleading requirements for a retaliatory discharge claim differ depending on the type of claim being asserted.

*Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1140 (Ill. App. Ct. 1st Dist. 2000). In *Palmateer v. International Harvester Company*, 421 N.E.2d 876, 880 (Ill. 1981), the Illinois Supreme Court specifically extended retaliatory discharge claims to include instances of whistleblowing and because that case dealt with whistleblowing, there was an obvious factual predicate involving the discharged employee reporting the misconduct to someone. However, in *Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 377 (Ill. 1985), the court applied the tort of retaliatory discharge in a situation where a worker was fired for refusing to engage in conduct that violated public policy, as opposed to reporting an employer for violating the law, and thus factually there was no issue of reporting. *Stebbings*, 726 N.E.2d at 1140. *Wheeler* therefore, is inapposite to the case here, where Plaintiff is clearly alleging that she was discharged in retaliation for reporting her employer's potential malfeasance.

To successfully plead a claim for retaliatory discharge for engaging in whistleblowing in Illinois, one must allege: "(1) that he or she has been discharged; (2) in retaliation for his or her activities; and (3) that the discharge violates a clear mandate of public policy. *Id.* at 1140. Plaintiff has not pled an adequate claim for common law retaliatory discharge. While she has pled that she was discharged in retaliation for her whistleblowing activities, she has not pled facts that demonstrate it is plausible that her discharge violates a clear mandate of public policy.

Defendants cite *Michael v. Precision Alliance Group, LLC*, 952 N.E.2d 682 (Ill. App. Ct. 5th Dist. 2011) for the contention that Plaintiff must have reported the alleged criminal offense to a governmental official or law enforcement agent. As

explained earlier, the Court has read the Amended Complaint liberally as already containing that allegation. Regardless, the *Michael* case actually supports the Plaintiff's position that she need not have reported the alleged criminal offense directly to a governmental official or law enforcement agent to maintain the retaliatory discharge claim.

> *Michael* states

> Illinois has looked to both the intent of the plaintiff and the motive of the employer in evaluating retaliatory discharge actions based on whistleblowing. Undoubtedly, the intent of the employee to blow the whistle is vital to a claim of retaliatory discharge....

> Defendant points to precedent describing protected activities as including reporting to government agencies, but <u>in no instance has Illinois required an employee to make a direct report to a government agency</u>....

> At the crux of causation in retaliatory discharge actions is the question of whether the employer had a retaliatory motive....

> <u>Whether plaintiffs reported directly to a government agency or relayed information through another person is irrelevant to questions of whether the motive of defendant was retaliatory and whether the intent of plaintiffs was to blow the whistle</u>.

952 N.E.2d at 688-89 (emphasis added). *Michael* holds that *how* the reporting occurred or *to whom* the employee reported are not important considerations so long as the employee was motivated to inform a governmental body. *Id*. Here, since a report was already made to a governmental body, all that remains is the issue of whether the employer fired the employee for making the report. The *Michael* court focused on the fact that the plaintiffs alleged that they took part in activities that led to the government's investigation of the employer's activities. *Id*. at 689. Although the facts are not entirely the same here, clearly the Plaintiff has alleged

13

that she engaged in activities that would lead to Defendants being investigated for criminal violations of the law and that she was fired because of it. That is sufficient for a common law claim of retaliatory discharge. The problem with this claim lies elsewhere.

Plaintiff alleges Martin, through the entity Defendants, charged an elderly customer directly instead of through insurance and that the elderly customer paid more as a result. This Court is unaware of anything criminal or unethical about billing someone directly for prescription medicine as opposed to billing their insurance. At most, Plaintiff hints at some sort of agreement between Martin[3] and the elderly customer's attorney by alleging that she was informed Martin and the elderly client's attorney had an arrangement that was a "can of worms." But an agreement or arrangement in of itself is innocuous, unless it is to accomplish something illegal, and again, billing someone directly for prescriptions is not—as far as the Court's research has uncovered—illegal.[4] The mere mention of a "can of worms" is a far cry from alleging Martin and the attorney are involved in a plausible kickback scheme, for example. Plaintiff has not alleged any facts that demonstrate Defendants were engaged in illegality.

Thus, while Plaintiff has pled that financial exploitation of an elderly person is a crime, and the cases are crystal clear that the public policy mandate element is easily established when the employer's alleged wrongdoing is criminal, *Michael*, 726

---

[3] It should be noted that simply because Martin may have engaged in conduct does not necessarily mean that the entity Defendants are liable for such conduct.

[4] If anything—and assuming that self-paying resulted in higher cost than going through insurance—the attorney may have had a fiduciary duty to the elderly customer that he may have violated by not conserving her funds, but Plaintiff does not explain how that would implicate the Defendants in any criminality.

N.E.2d at 1140-41 citing *Palmateer,* 421 N.E.2d at 879, she has not pled anything from which one can plausibly conclude financial exploitation even took place. Her allegations actually undermine whether she held a good faith belief that criminality was afoot as she states in the Amended Complaint that she told the elderly customer she was unable to say whether the attorney was stealing the customer's money.

Thus for the above-stated reasons, Plaintiff has not sufficiently pled the third element of an Illinois common law retaliatory discharge claim. The law does not require a whistleblower to ultimately be correct that the employer engaged in the conduct reported, but the whistleblower must nevertheless articulate a good faith basis for his suspicion that the conduct violates public policy—here by allegedly engaging in criminality—if he wishes to bring his termination under the ambit of a common law retaliatory discharge claim. *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) citing *Palmateer*, 421 N.E.2d at 880 ("Persons acting in good faith who have probable cause to believe crimes have been committed should not be deterred from reporting them by the fear of unfounded suits by those accused."); *see also Michael v. Precision Alliance Group, LLC*, 952 N.E.2d 682, 688 (Ill. App. Ct. 5th Dist. 2011) ("the determination of what activity should be protected involves the question of whether an employer is frustrating a significant public policy by using its power of dismissal in a coercive manner." (quotation marks and citations omitted)).

In other words, the general law in Illinois is that employees are at-will and can be terminated by the employer for any or no reason. *Michael*, 952 N.E.2d at 687.

Illinois courts have read the retaliatory discharge exception into the law in order to protect public policy, of which the investigation and prosecution of crimes are of undoubtedly primary importance. *Palmateer*, 421 N.E.2d at 880. But in a case such as this, where the employer's alleged underlying conduct does not implicate the violation of any law, the justification for applying the tort of retaliatory discharge dissipates and the claim is not cognizable.

The motion to dismiss is granted with respect to Count VII of the Amended Complaint.

## IV.  Count VIII: Violations of the IWA

Plaintiff claims Defendants violated the IWA in two ways: first, by prohibiting her from disclosing the elderly customer's financial exploitation to an appropriate agency and second, by terminating her for refusing to engage in illegal activity. Defendants claim that the conduct for which Plaintiff complains is not prohibited by the IWA because the statute prohibits an employer from retaliating against an employee for disclosing information to a government or law enforcement agency. (Doc. 14 at 12). Defendants are clearly wrong and have inexplicably ignored section 174/20 of the statute which unambiguously prohibits employers from retaliating against employees for refusing to participate in activities that would result in a violation of law. Nevertheless, the Court finds the claims should be dismissed anyway because there are no factual allegations substantiating them.

The IWA prohibits employers from retaliating against employees who disclose adverse information to certain governmental agencies and employees who refuse to participate in illegal activities. 740 Ill. Comp. Stat. §§ 174/15 and 174/20.

There are no factual allegations in the Amended Complaint that support the conclusory allegation that Defendants prohibited Plaintiff from disclosing the elderly customer's purported financial exploitation. Plaintiff alleged in the Amended Complaint that an assistant manager told her to "leave it alone" when she questioned as to why the elderly customer's insurance was not being billed. The Court does not find that remark, even if true, arises to a prohibition issued by the employer to Plaintiff to not report. In any event, the Amended Complaint is clear that Plaintiff reported her suspicions to the customer and to the State's Attorney's Office, so obviously she (illogically) claims to already have done what she was allegedly prohibited from doing.

Similarly, there are no factual allegations pled in the Amended Complaint that Plaintiff was being asked to engage in any illegal activity. Plaintiff alleges her job was to deliver medications to the elderly customer; nothing more.[5] Plaintiff specifically alleged:

> Plaintiff's employment was terminated by Defendants because she refused to engage in illegal activity, including but not limited to her refusal to cause or participate in the financial exploitation of the elderly customer and/or deceive the elderly customer with respect to the billing or payment of her medications.

(Doc. 12 at ¶77). These facts, including the Court's previous discussion that billing a patient directly does not in and of itself implicate criminality, are insufficient to establish that Plaintiff was communicating to her employer a refusal to take part in any illegal activity, which is what the IWA requires. She does not even allege that

---

[5] Even if Plaintiff alleged she took part in the billing of the elderly customer, she has not explained how paying more for the medication than she otherwise would have is in and of itself illegal.

she told her employer she would not deliver medication to the elderly customer once she found about the arrangement between Martin and the elderly customer's attorney.

In short, the Amended Complaint contains nothing from which one can conclude the Defendants prohibited Plaintiff from disclosing the alleged financial exploitation or that she was ever asked to engage in illegal activity or conceal illegal activity. Consequently, Count VIII is dismissed because the Plaintiff has not included enough factual support to substantiate that a violation of the IWA occurred. "To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Indep. Trust Corp.*, 665 F.3d at 934–35 (citing *Iqbal*, 556 U.S. 662) (internal quotation marks omitted).

## V.    COUNT IX: VIOLATION OF THE ADULT PROTECTIVE SERVICES ACT

The APSA provides in relevant part that

> No employer shall discharge, demote or suspend, or threaten to discharge, demote or suspend, or in any manner discriminate against any employee who makes any good faith oral or written report of suspected abuse, neglect, or financial exploitation **or** who is or will be a witness or testify in any investigation or proceeding concerning a report of suspected abuse, neglect, or financial exploitation.

320 Ill. Comp. Stat §20/4.1 (emphasis added). Nothing within the statute's definitions purports to limit the scope of who is an employee vis-à-vis a given employer. Nor is there any limitation as to whom the report had to have been made. Defendants argue that Plaintiff is not a mandated reporter under the statute and thus she falls out of its protections. They undoubtedly make this argument because Plaintiff pled she was a mandatory reporter in paragraph 79 of the Amended

18

Complaint. Apparently, Defendants and Plaintiff both believe she can only seek the APSA's protections if she is a mandatory reporter. However, the Court finds the issue of whether Plaintiff is a mandated reporter wholly irrelevant and that Plaintiff is an employee protected by the straightforward language of 320 Ill. Comp. Stat §20/4.1.

Section 20/4(a) of the APSA allows for "any person" who suspects the abuse, neglect, financial exploitation, or self-neglect of an eligible adult to report this suspicion to an agency designated to receive such reports under the APSA or to the Department. The "Department" is the Department of Aging of the State of Illinois. 320 Ill. Comp. Stat. §20/2. However, section 20/4.1 protects "any employee" from discharge in retaliation for making a good faith report of suspected financial exploitation. Section 20/4.1 does not contain any qualification or limitation on which agency the employee had to report the exploitation.

Plaintiff's claim that her post-termination report to the Department of Aging suffices to establish causation fails as a logistical impossibility. One cannot be heard to argue one was terminated for something one did not do until after being terminated.

However, the State's Attorney's Office is an office dedicated to prosecuting crimes. Financial exploitation of the elderly is a crime. Therefore, Plaintiff's allegation that she reported the purported exploitation to the State's Attorney prior to her termination of employment would be enough to satisfy the pleading

requirements for an APSA retaliation violation under 320 Ill. Comp. Stat §20/4.1.[6]

Furthermore, this claim may stand because it not only protects those who make a good faith report of suspected financial exploitation but also <u>those who will be a witness in any investigation or proceeding concerning a report of suspected financial exploitation</u>. The Court has already explained that Plaintiff's previous retaliation claims are undone by her failure to plead any allegations suggesting her employers engaged in plausible financial exploitation of an elderly customer. That failure does not affect this claim though because as the one who alerted the elderly customer to her purported exploitation and as the one who disclosed the purported exploitation to the State's Attorneys' Office, she will obviously be a witness in any investigation or proceeding concerning a report of suspected financial exploitation. Such a potential witness is protected under the natural language of the APSA. *See* 320 Ill. Comp. Stat §20/4.1.

Therefore, the motion to dismiss is denied with respect to Count IX, in which violation of the APSA is alleged.

---

[6] The Court must emphasize that it is allowing this claim predicated upon the purported disclosure to the State's Attorneys' Office, along with the IWA claim to the extent it is predicated on the same, to only go forward as pled because this matter is before the Court on a motion to dismiss. Although the Plaintiff states she informed the State's Attorneys' Office of the suspected exploitation of the elderly customer prior to her termination she has not alleged any facts as to how Defendants either knew or could have known she took such action. Thus, there are no facts alleged in the Amended Complaint that provide a causal link between Plaintiff's alleged disclosure to the State's Attorneys' Office and her termination. A causal connection between the reporting and the termination must be proven at summary judgment or at trial, but can be inferred at this stage of the litigation. *See, e.g., Flick v. S. Illinois Healthcare, NFP*, 21 N.E.3d 82, 87 (Ill. App. Ct. 5th Dist. 2014); *Reid v. Neighborhood Assistance Corp. of Am.*, No. 11 C 8683, 2013 WL 1087557, at *9-10 (N.D. Ill. Mar. 14, 2013) *aff'd*, 749 F.3d 581 (7th Cir. 2014).

## VI.     Additional Considerations

### A.     Count IV: Violation of the Illinois Minimum Wage Law for Failure to Create and Maintain Accurate Records

Despite asserting that the IMWL does not authorize private suits for record-keeping violations as a reason for the Court to find the IWPCA does not authorize private suits for failure to provide employees with itemized payroll information, Defendants have inexplicably failed to request the dismissal of Count IV of the Amended Complaint, in which Plaintiff expressly requests relief for the Defendants' alleged failure to create and maintain accurate records under the IMWL.

This Court has been loath to dismiss a claim that a Defendant, especially one represented by counsel, has failed to move to dismiss. Nevertheless, the Seventh Circuit allows for *sua sponte* 12(b)(6) dismissals when there is a sufficient basis for the dismissal evident from the pleadings. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Having reviewed the IMWL, *Nicholson v. UTi Worldwide, Inc.*, No. 3:09-CV-722-JPG-DGW, 2010 WL 551551, the Amended Complaint, and several cases finding no private cause of action for failures to keep records under the FLSA,[7] this Court also finds there is no private cause of action for purported failures of employers to create and maintain accurate records under the IMWL. Federal courts have an inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Link v. Wabash R. Co.*, 370 U.S.

---

[7] "The Illinois law [IMWL] parallels the Federal law.... The same analysis which applies to a violation of the FLSA applies to State law." *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 799 (N.D. Ill. 2013) quoting *Haynes v. Tru–Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. Ct. 4th Dist. 1987).

626, 630-31 (1962). Consequently, the Court dismisses Count IV of the Amended Complaint for failure to state a claim upon which relief can be granted.

### B.    Collective /Class Action

The Court has reviewed the Proposed Agreed Discovery Plan and Scheduling Order (Doc. 20) submitted by the parties and has noticed there is no mention of an "opt-in" deadline for would-be similarly-situated employees of Defendants to join the FLSA claim. Moreover, the docket reveals no motion for conditional certification and judicial notice under the FLSA has yet been made. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought."). There is mention of a deadline for the filing of motions to join in the Proposed Agreed Discovery Plan and Scheduling Order, but such motions would not seem appropriate for a purported collective action under the FLSA.

In any event, whether Plaintiff's FLSA claim will ultimately proceed as a collective action must be decided at a preliminary or conditional certification stage of the case, at which time Plaintiff will be required to establish that others are similarly situated to her, and at the final certification stage. *See* 29 U .S.C. § 216(b); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) ("The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action."). As for the Illinois state law claims, Plaintiff will also have to show that class treatment is appropriate under Federal Rule of Civil Procedure 23. *Id*. The

Proposed Agreed Discovery Plan and Scheduling Order fails to accommodate the requirement of Rule 23(c)(A) that the Court determine the class action status as soon as practicable.

### CONCLUSION

For the reasons stated above Defendants' Motion to Dismiss Certain Claims (Doc. 13) is GRANTED IN PART and DENIED IN PART.  Counts II, IV, V, VII and VIII are dismissed with prejudice.[8] Count IX remains. Other counts of the Amended Complaint not at issue in the motion *sub judice* remain intact.

This case is REFERRED back to Magistrate Judge Hawley for further non-dispositive pretrial proceedings.

Entered this <u>19th</u> day of October, 2015.


s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge

---

[8] Although the claim put forth in Count VIII was cognizable, unlike the claims in Counts II, IV and V, dismissal with prejudice is still appropriate. That is because when a court dismisses a claim pursuant to a Rule 12(b)(6) motion, the dismissal must be with prejudice because the claim is not one upon which relief can be granted. *Kamelgard v. Macura*, 585 F.3d 334, 339 (7th Cir. 2009). Amendment of the claim will only be allowed upon motion and upon a showing that such amendment would not be futile. *See Stanard v. Nygren,* 658 F.3d 792, 797 (7th Cir. 2011).