## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| RHONDA S. WILLIAMS, on behalf of herself and other similarly situated employees and all others who consent to become Plaintiffs,<br><br>    Plaintiff,<br><br>    v.<br><br>MERLE PHARMACY, INC., CENTRAL ILLINOIS MEDICAL EQUIPMENT, INC., AND WILLIAM M. MARTIN,<br><br>    Defendants. | Case No.  15-cv-1262 |

## O R D E R  &  O P I N I O N

This matter is before the Court on Plaintiff's motion for leave to file the attached Second Amended Complaint (Doc. 29). This Court previously dismissed with prejudice Counts II, IV, V, VII and VIII of the First Amended Complaint. (Doc. 21). Only Counts VII and VIII are at issue in the present motion to amend the pleadings: Count VII is a state law claim for retaliatory discharge and Count VIII is a claim under the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1 *et. seq.* (the "IWA"). Plaintiff now submits allegations sufficient to show plausible claims in Counts VII and VIII and has demonstrated that amendment of the First Amended Complaint in that respect would not be futile assuming the truth of the allegations. Therefore, Plaintiff's Motion For Leave To File Second Amended Complaint (Doc. 29) is GRANTED. Plaintiff shall file the Amended Complaint as a stand-alone docket entry.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 15(a)(2), a court should generally give leave to amend a complaint "when justice so requires." "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182, (1962). Nevertheless, district courts "have broad discretion to deny leave to amend" for a host of reasons including "where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). "An amendment is futile when it merely restates the same facts using different language, or reasserts a claim previously determined; when it fails to state a valid theory of liability; or when it could not withstand a motion to dismiss." *Villars v. Kubiatowski*, No. 12-CV-4586, 2015 WL 5162736, at *3 (N.D. Ill. Sept. 2, 2015) (citing *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir.1992) (citations and internal quotation marks omitted)). *See also Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 524 (7th Cir. 2015) ("when the basis for denial is futility, we apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim.").

## FACTUAL BACKGROUND[1]

Plaintiff was employed by Merle Pharmacy ("Merle"), Central Illinois Medical ("CIME"), and/or Martin (hereinafter "Defendants") from on or about November 2004 until July 29, 2014, when she was fired. Her job responsibilities included, but

---

[1] All well-pled facts must be construed in Plaintiff's favor when ruling on a Motion to Dismiss; so these background facts are drawn from the Proposed Amended Complaint and are taken as true for purposes of this motion only. (Doc. 29-1).

were not limited to, providing accurate explanations to billing questions and inquiries by customers; understanding Medicare regulations (including coverage criteria) and private insurance procedures; and implementing accreditation standards, laws and regulations related to compliance. During the course of her employment, her training included, *inter alia*, Medicare Fraud, Waste and Abuse education. She also routinely processed customers' health insurance (Medicare and/or private) for the payment of their prescriptions and health related expenses.

Prior to her termination, Plaintiff also routinely delivered medication to a certain elderly customer of Defendants. The elderly customer was an adult with disabilities over the age of sixty, was a Medicare beneficiary and had prescription medication insurance. Defendants knew the elderly customer was a Medicare beneficiary. Defendant Martin had repeatedly told her that he was looking out for her best interests.

An attorney with a history of ethical violations was this elderly customer's attorney and held her Power of Attorney. He handled her financial affairs, including paying for her healthcare from her personal funds. During the course of Plaintiff's deliveries, the elderly customer informed Plaintiff that her attorney had often told her she had no money, refused to share information about her finances with her, and refused to provide her with even modest sums of money for her discretionary spending.

In approximately late June 2014, Plaintiff delivered medication to this elderly customer who remarked that she was thankful that her insurance paid for her medications. Plaintiff informed the elderly customer that her insurance did not

3

pay Defendants for her medication, and that Defendants were not billing, and to her knowledge, had never billed, the elderly customer's insurance for her medications. The elderly customer informed Plaintiff that she always had insurance for her prescriptions; Defendants were supposed to bill her insurance for her medications; that Defendants and her attorney led her to believe that billing occurred between Defendants and her insurance; and no one had previously told her that her insurance was not being billed by Defendants for her medications.

Plaintiff informed the elderly customer that each month Martin sends her attorney a bill for the full retail amount of her medications (thousands of dollars each month), and that her attorney paid the bills with the elderly customer's money; and, that she was likely losing money because if her insurance had been processed by the pharmacy for her medications, she would not be charged or pay nearly as much for her medications.

Defendants charged the elderly customer grossly inflated and excessive prices. For example, Defendants charged the elderly client nearly $600 for a single recurring prescription that could be purchased by a cash paying individual without insurance from other local pharmacies for under $140; for another single recurring prescription, Defendants charged the elderly client over $500 for the same product that could be purchased by a cash paying individual without insurance for under $120 from local pharmacies. On yet another prescription, the elderly customer was charged nearly $164 for a product that cost Defendants approximately $4.40. No other customer of Defendants who was a Medicare beneficiary or had private

insurance was charged or paid the same grossly inflated prices that were charged to the elderly customer.

The elderly customer requested that Plaintiff investigate the arrangement between Defendants and her attorney to determine if she was being financially harmed. Shortly thereafter, Plaintiff told Defendants' pharmacy manager that she was concerned that the elderly client had insurance which was not being billed by the pharmacy for her medication, and instead the elderly client was paying exorbitant prices out-of-pocket. The pharmacy manager told Plaintiff that Martin and the elderly client's attorney had an arrangement that was a "can of worms." Plaintiff told the assistant pharmacy manager that the arrangement did not make sense because the elderly customer's insurance premiums, co-pays and deductibles combined would cost significantly less than what she currently pays out-of-pocket on a monthly basis, and that she could never recover the amounts she paid from insurance. The manager told Plaintiff not to talk about it and to "leave it alone." Plaintiff became suspicious of the billing arrangement.

Defendants Merle and CIME were legally and contractually obligated to accept the elderly customer's insurance be it Medicare or private insurance as well as legally obligated to offer her negotiated prices that were substantially lower than full retail price she paid. Plaintiff claims it is Medicare fraud, waste and/or abuse for a pharmacy to fail to offer Medicare beneficiaries negotiated prices.

Defendants and the attorney caused the elderly client to purchase medication at a grossly excessive price and denied her a substantial benefit of the insurance she had purchased. The arrangement resulted in gross and willful overcharging of

5

the elderly customer. Pharmacists in the state of Illinois are subject to revocation of their licenses to practice pharmacy for gross and willful overcharging for their services.

On or about July 8, 2015, Plaintiff informed the elderly customer that it seemed she was being financially harmed by the situation. The elderly customer again asked for assistance. Plaintiff informed her that she was working on making a report to the appropriate authorities. Thereafter, but prior to her termination and pursuant to Defendants' legal compliance program, Plaintiff spoke with Defendants' "Accreditation Coordinator" about the billing arrangement. She told the Accreditation Coordinator that she thought the elderly customer was losing money, both Martin and the attorney were illegally profiting from the wrongful billing scheme, and the situation needed to be further reported to appropriate authorities. The Accreditation Coordinator told Plaintiff that she did not want anything to do with the situation because she did not want a conflict with Martin. Plaintiff informed the Accreditation Coordinator that she was in the process of determining where and how to report her suspicions herself. Prior to her termination, Plaintiff contacted the State's Attorneys' office and reported what she regarded to be potentially criminal misconduct of Defendants and/or the attorney as related to billing and payment of the elderly client's medications.

On or about July 28, 2014, MARTIN returned to Bloomington from being out of the country for several weeks. On July 29, 2014, MARTIN terminated Plaintiff. He told her that she was terminated because, inter alia, she disclosed to the elderly client the billing arrangement between Defendants and her attorney.

The Adult Protective Services Act, 320 ILCS 20/1, et. seq., made both Martin and Plaintiff mandatory reporters of suspected financial abuse, neglect or exploitation of adults with disabilities and/or a person over the age of 60 who lives in a domestic living situation.

### DISCUSSION

**I.    The Court Has Jurisdiction To Adjudicate This Matter.**

Defendants argue that Plaintiff is procedurally barred from seeking to amend her complaint at this point of the litigation and the Court lacks jurisdiction to hear the instant motion. Defendants are incorrect. Their misunderstanding stems from the Court's nuanced determination that the claims at issue in this motion were dismissed with prejudice, and would only be reconsidered if the Plaintiff could show an amendment of the claims would not be futile.

"A dismissal for failure to state a claim is a dismissal on the merits, Fed.R.Civ.P. 41(b), unless the dismissal order states otherwise; and a dismissal on the merits is normally with prejudice and thus a bar to relitigation." *Kamelgard v. Macura*, 585 F.3d 334, 339 (7th Cir. 2009) (internal citations omitted). The usual exception is where the court reasonably perceives that allegations could be pled that cure the defect in the complaint by filing an amended complaint. *Id*. That is what the Court ordered. (*See* Doc. 21 at 23).

Ordinarily, dismissal is without prejudice to an opportunity to amend the complaint. Although the October 21, 2015 Order and Opinion dealt with the Plaintiff's second attempt at an adequate complaint—the First Amended Complaint, it was the Court's first time dismissing the counts on their merits. The

Court found that Counts VII and VII, containing the retaliatory discharge and IWA claims, did not state legal claims as pled and dismissed those counts with prejudice. However, it did not find that there were no facts that could ever be pled to satisfy such claims, as it had concluded for the other dismissed Counts. That is why the Court saw fit to caution Plaintiff that an amendment would only be considered as long as the amended claims did not appear futile.

> Additionally, Federal Rule of Civil Procedure 54(b) provides that
>
> when a civil action presents more than one claim for relief, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

No final judgment was entered in this matter.

For all these reasons, the Court can entertain the instant motion and determine its merits despite that its dismissal of the counts in its October 21, 2015 Order and Opinion was on the merits. Although the Court is loathe to revisit these issues after such a long delay, more than three months passed between the entry of the Order and Opinion dismissing the claims (Doc. 21) and the filing of Plaintiff's instant motion for leave to amend, it does not find that Defendants are prejudiced by the delay to justify not hearing the instant motion on such grounds.[2]

---

[2] "The Supreme Court has interpreted [Rule 15(b)(2)] to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015) citing *Foman v. Davis*, 371 U.S. 178, 182(1962). In their opposition brief (Doc. 31), Defendants do not argue any

8

## II. Illinois Common Law Retaliatory Discharge Claim

Plaintiff claims her new allegations suffice to state a claim of retaliatory discharge. As recognized by the Seventh Circuit, to properly allege an Illinois claim of retaliatory discharge, one must allege she has been discharged in retaliation for her activities; and that the discharge violates a clear mandate of public policy. *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir. 1991). The so-called "crime-fighter" theory of retaliatory discharge is not so much a different theory than the "clear mandate" theory since there is no clearer mandate of public policy than when society deems certain behaviors to be crimes. Nevertheless, where a plaintiff advances the theory that she was discharged for her efforts in reporting what she thinks was a crime or regulatory violation—which is what the Plaintiff asserts in this case—she must obviously plead that there is some law or regulation that was violated. *Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1144 (Ill. App. Ct. 1st Dist. 2000).

Previously this Court found that Plaintiff failed to plead facts that demonstrated it was plausible that her discharge violated a clear mandate of public policy. Now Plaintiff pleads several factual scenarios to attempt to satisfy that pleading requirement. She is allowed to do so by Federal Rule of Civil Procedure 8(d) which allows a party to set out in a single count two or more statements of a claim or defense alternatively or hypothetically. And if the party does so, the pleading is sufficient if any one of alternative statements is sufficient. Fed. R. Civ. P. 8(d), which is the case in this instance.

---

of the grounds announced by the *Foman* court warrant this Court to disallow amendment except futility.

Most of these alleged scenarios do not suffice to support a claim of retaliatory discharge. First, Plaintiff alleges that the elderly customer was billed directly, yet she later alleges the attorney received insurance reimbursements. (Doc. 29-1 at 12 ("Plaintiff informed the elderly customer that her insurance did not pay Defendants for her medication, and that Defendants were not billing, and to her knowledge, had never billed, the elderly customer's insurance for her medications.", *compare with* 14-15 ("[Plaintiff] suspected the arrangement enabled Defendants to grossly overcharge the elderly customer and the attorney to steal the partial reimbursement sent to him by her insurance provider.")). These allegations are contradictory. If the insurance was never billed, as the Plaintiff alleges, then how could there be insurance reimbursements. Moreover, to the extent that Plaintiff bases her claim on alleged fraud, she has failed to plead this scheme with the requisite specificity required by Federal Rule of Civil Procedure 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507-08 (7th Cir. 2007). For instance, the Plaintiff has offered nothing more than pure speculation that Defendants were taking payments from the attorney and kicking him back money, or that the attorney was submitting Defendants' bills to an insurer and getting these transactions reimbursed. The Amended Complaint must specifically detail a fraudulent scheme, not merely hint at one.

Second, the alleged civil breaches of fiduciary duty do not sufficiently entail societal concerns, as opposed to individual concerns of the elderly customer who obviously is capable of maintaining a civil action to recoup money lost through any breaches of fiduciary duties owed to her. *See Belline*, 940 F.2d at188 (indicating

purely private concerns do not implicate violations of public policy). Thus, the alleged breaches of fiduciary duty are not enough to constitute violations of public policy. As to criminal breaches of fiduciary duty or theft by deception, the Court finds that as alleged, the Defendants had no fiduciary duty to the elderly customer. The Court also fails to understand how on the facts presented the Defendants could be deemed to have deceived the elderly customer. Plaintiff alleges that Defendants sent bills to the customer's attorney for payment. (Doc. 29-1 at 12 ("each month Defendant MARTIN sends her attorney a bill for her medications at full-retail-price *(thousands* of dollars each month); that her attorney paid the bills in full with her money *via* a check on a monthly basis."). These bills are not alleged to be fraudulent, just excessive. Charging someone full retail price—even if that person is the only one so charged—is not a crime. Moreover, to the extent that Plaintiff's claims rely on the theory that she was discharged in retaliation for exposing the fraudulent acts of the elderly customer's attorney, again this Court fails to see how this alleged fraud has been pled with particularity. She alleges this attorney took partial insurance reimbursements that he may have submitted himself and implies he took kickback payments from Martin but this information is presented in the amended complaint as complete speculation based upon textbook hearsay. Unfounded suspicion of crime is not enough to support a claim that a clear mandate of public policy was violated. Plaintiff must demonstrate a good faith basis for her claim. *See Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) citing *Palmateer*, 421 N.E.2d at 880 ("Persons acting in good faith who have probable

11

cause to believe crimes have been committed should not be deterred from reporting them by the fear of unfounded suits by those accused.").

Third, Plaintiff does not allege she informed anyone—not the elderly customer, not the States' Attorney, nor her internal administrators—that she believed Martin was violating his obligation as a "mandatory reporter" under the law. Therefore, the Court finds that the retaliatory discharge claim cannot be maintained upon this premise either.

Finally, Plaintiff alleges in a simple and straightforward manner that under Medicare regulations, the failure to offer negotiated prices is a violation of those regulations. In *Stebbings*, the court explained that the tort of retaliatory discharge "can also protect the reporting of the violation of regulations and statutes other than the" Illinois Criminal Code. 726 N.E.2d at 1145. The Court is satisfied that the violation of Medicare regulations is a sufficiently public interest to find that discharging an employee for attempting to bring such regulatory violations to light violates a clear mandate of public policy. *Brandon v. Anesthesia & Pain Mgmt. Associates, Ltd.*, 277 F.3d 936, 942-43 (7th Cir. 2002) (holding Illinois had a strong interest in ensuring that its Medicare recipients were not cheated out of proper medical care or benefits to support a retaliatory discharge claim).

In short, Plaintiff's amended allegations sufficiently state a basis for her discharge to be deemed a violation of a clearly mandated public policy based upon the violation of the Medicare regulations. Therefore, the operative complaint may be amended to include this claim.

12

**III.    Violation of the Illinois Whistleblower Act**

Plaintiff previously claimed that Defendants violated the IWA, in either of two ways: first, either by prohibiting her from disclosing the elderly customer's financial exploitation to an appropriate agency or second, by terminating her for refusing to engage in illegal activity. That count of the First Amended Complaint was dismissed because Plaintiff's allegations did not support, indeed, belied her legal claim. She now claims Defendants violated the IWA by terminating her for disclosing to the State's Attorney's Office the potential unlawful conduct against the elderly customer, which she alleges includes the violation of Medicare regulations. The IWA provides in relevant part:

> (b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

740 Ill. Comp. Stat. 174/15.

Plaintiff now pleads that Defendants violated Medicare regulations by failing to offer the elderly customer—whom they knew to be a Medicare beneficiary—Medicare negotiated prices on her medications, that such conduct violates the Medicare regulations and that she was terminated for disclosing that information (in addition to other concerns) to the States' Attorney's Office, a governmental agency. This is a sufficient claim under the clear language of the IWA. *See Guminski v. Massac Cty. Hosp. Dist.*, No. 14-CV-00849-JPG-SCW, 2015 WL 350669, at *2 (S.D. Ill. Jan. 27, 2015) ("[C]ourts have interpreted this statute to provide that an individual qualifies as a whistleblower only if he or she reports allegedly unlawful activity to some governmental authority or agency.").

13

**CONCLUSION**

For the reasons stated above Plaintiff's Motion For Leave To File Second Amended Complaint (Doc. 29) is GRANTED. Plaintiff shall file the Amended Complaint as a stand-alone docket entry.

Entered this <u>26th</u> day of February, 2016.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
