UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RHONDA S. WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MERLE PHARMACY, INC., CENTRAL ) <br> ILLINOIS MEDICAL EQUIPMENT, ) <br> INC., AND WILLIAM M. MARTIN, ) <br> ) <br> Defendants. ) | Case No. 15-cv-1262 |

## O P I N I O N & O R D E R

Before the Court is the Defendants' "Motion For Partial Summary Judgment (as to Counts VII, VIII and IX of the Plaintiff's Second Amended Complaint)" (Doc. 80). In their motion, Defendants argue that summary judgment is appropriate on the three retaliation based claims of the Second Amended Complaint (Doc. 36) because the Plaintiff has no evidence that she complained to authorities that the Defendants were specifically violating Medicare regulations before she was terminated. Also before the Court is Defendants' "Motion To Strike Exhibit 8 To The Plaintiff's Response To The Defendants' Motion For Partial Summary Judgment" (Doc. 89). For the reasons stated below, both motions are DENIED.

### BACKGROUND

I.     **Synopsis Of The Facts Giving Rise To The Claims At Issue**

Plaintiff worked for Defendants in their pharmacy and medical equipment supply businesses that operated out of the same location. One of her duties was to

deliver medications to customers. In the course of those duties, Plaintiff delivered medications to Carol Hanover, an elderly woman. Plaintiff came to understand that Hanover was being charged directly for medication instead of through insurance. She suspected that Hanover had Medicare. She thought it was odd that an elderly customer was being charged directly for medications so she began investigating why. In April or May of 2014, a coworker confirmed to Plaintiff that Hanover did not have Medicare Part D prescription drug coverage to even be billed by Merle. However, Hanover apparently had Medicare coverage through a Blue Cross/Blue Shield program for equipment and supplies being sold to her by CIME. There is no evidence before the Court that Hanover's Medicare coverage through a Blue Cross/Blue Shield carried a prescription drug benefit. Between the end of June and early July, 2014, Plaintiff contacted the office of the State's Attorney to report the potential financial exploitation of Hanover and seek guidance regarding how to report the situation so that an investigation by the proper authorities would be conducted. On July 29, 2014, she was terminated by Defendant Martin.

## II. History Of The Case

The Amended Complaint (Doc. 12) originally consisted of nine counts alleging violations of the federal Fair Labor Standards Act, 29 U.S.C. § 207 *et. seq.* (the "FLSA") (Counts I and II), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et. seq.* (the "IMWL") (Counts III and IV), the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et. seq.* (the "IWPCA") (Counts V and VI), Illinois common law of retaliatory discharge (Count VII), the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1 *et. seq.* (the "IWA") (Count VIII), and the Illinois Adult

Protective Services Act (the "APSA"), 320 Ill. Comp. Stat. 20/1 *et. seq.* (Count IX). Plaintiff initially pled insufficient facts to sustain Counts II, IV, V, VII and VIII (Doc. 21) and so the Court dismissed those Counts after the Defendants moved the Court to do so. The various wage law claims are not relevant to the disposition of the motions *sub judice* and will not be discussed further.

The Court found that Counts VII and VIII, the Illinois common law retaliatory discharge claim and the Illinois Whistleblower Act claim respectively, were insufficiently pled. As to Count VII, the common law retaliatory discharge claim, the Court found that the Plaintiff had not pled facts that demonstrated it was plausible that her discharge violated a clear mandate of public policy. As recognized by the Seventh Circuit, to properly allege an Illinois claim of retaliatory discharge, one must allege he has suffered an adverse employment action in retaliation for his activities, and that the discharge violates a clear mandate of public policy. *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir. 1991). In an attempt to cure the deficient pleading, Plaintiff offered a Second Amended Complaint that contained several different theories of liability for retaliatory discharge. (Doc. 36 at ¶¶70-72, 85). The Court rejected each of them except one. (Doc. 35 at 10-12). Plaintiff alleged that the Defendants violated Medicare regulations by failing to bill the Medicare insurance of an elderly customer, Hanover, for her prescription medication. The Court concluded that the violation of Medicare regulations was a sufficiently public interest to find that discharging an employee for attempting to bring such regulatory violations to light violated a clear mandate of public policy. (Doc. 35 at 12). The Defendants then filed a motion to reconsider the Court's grant of leave to file the amended complaint

arguing that such a theory was still deficient because they had not in fact violated Medicare regulations. (Doc. 37). The Court disagreed and noted that whether Defendants had indeed violated Medicare regulations was not dispositive; instead whether Plaintiff had a good faith belief that such regulations were being violated was dispositive.

In her opposition brief to the Defendants' motion for reconsideration, the Plaintiff wrote that "[f]or purposes of retaliatory discharge, the statute relied upon need not actually apply to the complained of situation; it need only demonstrate the existence of the public policy regarding the subject." (Doc. 40 at 6). The Court interpreted that statement as the Plaintiff arguing that she need not have complained about the violation of Medicare regulations or to have even been concerned with the violation of such regulations at the time she was engaging in protected activity. In other words, it appeared to the Court that Plaintiff was contending that as long as she could fit her claim into a legally plausible theory after the fact, it did not matter that she was not operating in accordance with that theory before her termination. The Court disagreed with that contention.

Moreover, as the Medicare regulations allegations were newly pled, the Court was puzzled by their previous omission from the Amended Complaint. When coupled with the fact that the allegations surrounding Medicare regulations were noticeably absent from the prior complaint and that such allegations rather easily sufficed to state a plausible claim, the Court became skeptical and stated that "should it come to light that Plaintiff did not actually specifically complain to authorities that Defendants were violating Medicare regulations, the Court will not hesitate to

4

dismiss these claims." This was not so much a pronouncement of the law of retaliatory discharge as it was a simple explanation that the Court would not tolerate pleading untrue allegations simply to survive dismissal.

As to the IWA claim, Plaintiff restructured her claim completely. Initially, she pled in the Amended Complaint that Defendants violated the IWA in either of two ways: first, either by prohibiting the Plaintiff from disclosing Hanover's financial exploitation to an appropriate agency or second, by terminating the Plaintiff for refusing to engage in illegal activity. (Doc. 12 at ¶¶ 76-77). The Court dismissed the claim as pled because Plaintiff's allegations did not support it; indeed, they belied her claim. Plaintiff then refashioned her claim and alleged in the Second Amended Complaint that the Defendants violated the IWA by terminating her for disclosing to the State's Attorney's Office the potential unlawful conduct against Hanover, which she alleged included the violation of Medicare regulations. (Doc. 36 at ¶¶ 85, 93). Obviously, if the evidence shows Plaintiff had no actual concern about possible Medicare violations when she reported the situation to the State's Attorney's Office, then her pleadings were disingenuous and her claim should be dismissed.

Now the Defendants seek summary judgment on Counts VII (common law retaliatory discharge), VIII (Illinois Whistleblowers' Act), and IX (Adult Protective Services Act), based on the Court's single statement in its Order denying reconsideration of it decision to allow Plaintiff to replead Counts VII and VIII that "[s]hould it come to light that Plaintiff did not actually specifically complain to authorities that Defendants were violating Medicare regulations, the Court will not hesitate to dismiss these claims." (Doc. 41 at 5).

5

Defendants filed their "Motion For Partial Summary Judgment (as to Counts VII, VIII and IX of the Plaintiff's Second Amended Complaint)" (Doc. 80) on March 1, 2017. Because Defendants had already filed one unsuccessful motion for summary judgment (Doc. 43), on March 2, 2017, the Court took Document 80 into consideration in a Text order and specifically mentioned that the Defendants had until May 30, 2017—the close of discovery—to modify or update their motion (Doc. 80). The Defendants chose not to do so.

On June 13, 2017, the Court entered a Text Order putting the parties on notice that the Court had observed the Defendants failed to update or modify their motion (Doc. 80) and the Court took that failure to mean Defendants were content to move forward with their motion and accompanying papers as they then existed. On July 5, 2017, Plaintiff filed her response to Defendants' Motion for Partial Summary Judgment responding to Defendants' argument. (Doc. 86). Then on July 19, 2017, Defendants filed a reply brief. (Doc. 91). In the reply brief, Defendants presented new arguments not included in their motion. Their argument went well beyond the issue posed in the original motion—that Plaintiff failed to complain to authorities that the Defendants were specifically violating Medicare regulations before she was terminated—and instead delved into the reasonableness of and good faith basis for Plaintiff's suspicions and actions as they relate to the retaliatory discharge claim, the IWA claim and APSA claim.

**LEGAL STANDARDS**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may demonstrate the absence of a genuine dispute of material fact by citing to admissible evidence, or by showing that the non-movant cannot produce admissible evidence to support a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Upon such a showing by the movant, the non-movant may not simply rest on his or her allegations in the complaint. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (internal quotations and citation omitted); Fed. R. Civ. P. 56(c)(1). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

As an initial matter, the Court must rebuke the Defendants for failing to include their arguments and supporting facts concerning the reasonableness of Plaintiff's reporting her suspicions in their opening brief and instead bringing these new arguments and facts in their reply brief. It is universally known and accepted that new arguments and new facts are not permitted in reply briefs, *Developers Sur.*

7

*& Indem. Co. v. Kipling Homes, L.L.C.*, No. 11 C 4457, 2013 WL 315960, at *3 (N.D. Ill. Jan. 28, 2013) citing *Gold v. Wolpert,* 876 F.2d 1327, 1331 n. 6 (7th Cir. 1989). On March 2, 2017, the Court clearly instructed the parties that the Defendants had until May 30, 2017 to supplement or otherwise modify their summary judgment motion and the Defendants did nothing. The Court has been unable to find an exception recognized in this judicial circuit to the rule that reply briefs shall not contain new arguments or new facts. For that reason, the Defendants' arguments concerning the reasonableness of and good faith basis for Plaintiff's reporting of her suspicions are deemed waived for purposes of adjudicating the motion for summary judgment. Therefore, the Court will only address the issue put forth in the opening brief (Doc. 80), which was whether Defendants are entitled to summary judgment on the three retaliation based claims of the Second Amended Complaint (Doc. 36) because the Plaintiff has no evidence that she complained to authorities that the Defendants were specifically violating Medicare regulations before she was terminated.

## I. The Adult Protective Service Act ("APSA") claim

The APSA provides in relevant part that

> No employer shall discharge, demote or suspend, or threaten to discharge, demote or suspend, or in any manner discriminate against any employee who makes any good faith oral or written report of suspected abuse, neglect, or financial exploitation or who is or will be a witness or testify in any investigation or proceeding concerning a report of suspected abuse, neglect, or financial exploitation.

320 Ill. Comp. Stat. 20/4.1. The Court previously found that Plaintiff adequately pled an APSA claim. (Doc. 21 at 18-20). When the Court made its statement about Medicare violations, it was explaining why the Plaintiff's reformulated Illinois retaliatory discharge claim and IWA claim survived Rule 12(b)(6) dismissal

8

standards. The Court had already found that as pled, Plaintiff's allegations that she reported financial exploitation to the State's Attorney's Office were sufficient for an APSA claim. The Court's comment concerning whether Plaintiff specifically complained to authorities that Defendants were violating Medicare regulations did not even implicate the APSA claim. Now the matter has advanced to the summary judgment stage and so the Court must examine the purported evidentiary proof for the claim.

It makes no sense conceptually for the Plaintiff to have had to specifically mention Medicare regulations to the State's Attorney's Office in order to bring her report of financial abuse within the purview of the APSA since nowhere in the above quoted text does the Act mention Medicare regulations. As the Defendants concede, there is evidence the Plaintiff reported what she believed to be "illegal financial abuse" based upon conduct she believed to violate Medicare to the States' Attorney's Office. That is all the APSA requires. Unfortunately, whether Plaintiff was operating under a good faith basis is not before the Court. Therefore, the Motion for Partial Summary Judgment (Doc. 80) is denied as to Count IX, the APSA claim.

## II. Common Law Retaliatory Discharge

A successful claim for retaliatory discharge for engaging in whistleblowing in Illinois must have evidence to support three elements: "(1) that [the plaintiff] has been discharged; (2) in retaliation for his or her activities; and (3) that the discharge violates a clear mandate of public policy. *Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1140 (Ill. App. Ct. 1st Dist. 2000). It is agreed Plaintiff was discharged. There is evidence that Plaintiff was terminated because she was voicing concerns to co-

workers that she suspected financial exploitation of an elderly customer was occurring, that her employers were complicit in the exploitation, and that she was going to report the same to authorities. The primary question, for purposes of this motion then, is whether there is evidence that her discharge violated a clear mandate of public policy.

Discharging someone for reporting the apparent violation of Medicare regulations is a violation of a clear mandate of public policy. This is the only theory of liability for the retaliatory discharge claim that the Court accepted as plausible. (Doc. 35 at 12). Because retaliatory discharge claims are exceptions to the common law rule of at-will employment, courts look at the intentions of the whistleblower to ensure that such plaintiffs have an actual public concern when they engage in protected activity. *See Michael v. Precision Alliance Group, LLC*, 952 N.E.2d 682, 688 (Ill. App. Ct. 5th Dist. 2011) ("Undoubtedly, the intent of the employee to blow the whistle is vital to a claim of retaliatory discharge. As was stated in *Palmateer,* the matter 'must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.'"). So, to obtain summary judgment based upon what was argued in their motion, the Defendants must show that the evidence establishes Plaintiff was not actually concerned with the violation of Medicare regulations prior to her termination. They have not made such a showing.

Plaintiff voiced specific concerns to Luke Stremlau, the manager of the pharmacy, about the elderly customer's Medicare D prescription drug coverage. (Doc. 86 at 19). That fact that she voiced these concerns about the purported failure of the pharmacy to bill Hanover's Medicare for her prescriptions to Stremlau establishes

that she was actually concerned about potential violations of Medicare regulations requiring Medicare recipients being offered negotiated prices on prescriptions. Stremlau testified that in April or May of 2014, Plaintiff wanted to know from him why the elderly customer's Medicare insurance was not being billed for her prescriptions. (Doc. 86-6 at 14). Stremlau testified he believed Plaintiff said that "{Hanover's] got Medicare A and B so she should have D". (Doc. 86-6 at 14). That is when he utilized some pharmacy software and showed the Plaintiff that there was no current Medicare Part D coverage in the pharmacy's records for Hanover. Plaintiff did not reach out to the State's Attorney's Office until June or July of 2014. (Doc. 86 at 12, 86-9 at 5).

Thus, Plaintiff knew well before her communication to the State's Attorney's Office that Merle had no Medicare Part D prescription drug coverage to even bill. But this evidence only speaks to the reasonableness of the Plaintiff's concerns, not to whether she had an actual concern, which she clearly did. Because the Defendants waived the reasonableness argument, the Court cannot hear it and it need not entertain it any further for purposes of this motion for summary judgment.

The Motion for Partial Summary Judgment (Doc. 80) is denied as to Count VII, the Illinois retaliatory discharge claim.

### III. Illinois Whistleblower Act Claim

The IWA provides in relevant part that an "employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. 174/15(b).

The statute explicitly calls for the whistleblower to disclose to a government or law enforcement agency information that in turn "discloses a violation of a State or federal law, rule, or regulation." The Court has not found a single authority that states for such a claim to be actionable, the plaintiff must identify the specific State or federal law, rule, or regulation the plaintiff suspects is being violated.

However, for all the reasons given in the Order & Opinion dated February 26, 2016 (Doc. 35), the only plausible theory the Court has allowed to go forth for the IWA claim was that Defendants violated Medicare regulations by failing to offer the elderly customer—whom they knew to be a Medicare beneficiary—Medicare negotiated prices on her medications, that such conduct violates the Medicare regulations and that she was terminated for disclosing that information to the States' Attorney's Office, a governmental agency.

Defendants argue that Plaintiff cannot demonstrate that her suspicions were reasonable. The reasonableness requirement under the IWA is very similar to the common law retaliatory discharge claim. But as the Court has already explained above, Plaintiff's reasonableness was not argued in Defendants' opening brief and was therefore, deemed waived.

Plaintiff was asked at her deposition what she told the State's Attorney's Office. Her response was:

> I just explained a little bit of the situation that was going on, that it was an elderly customer that had been told that her insurance would be billed through the pharmacy and that in fact it hasn't been being billed since I've been employed there. And that -- I'm sorry. I'm getting a spasm. That she was concerned about her finances being taken over by someone without her knowledge. As far as what I mean by that is that her finances were being abused when she had insurance available to cover her prescriptions.

(Doc. 86-9 at 60). This is a vague answer but not so vague that it cannot be said that such a response failed to disclose information that in turn would lead to the ultimate discovery of Medicare regulation violations if such violations were in fact occurring. Moreover, it has already been established that Plaintiff was actually concerned about Hanover being a Medicare beneficiary but paying out of her pocket for prescriptions. That is protected whistleblowing under the IWA and so the Motion for Partial Summary Judgment (Doc. 80) is denied as to Count VIII, the IWA claim.

## IV. Motion To Strike

Exhibit 8 to "Plaintiff's Response To The Defendants' Motion For Partial Summary Judgment" is a letter from Defendants' counsel to Plaintiff's counsel settling some discovery issues. Plaintiff cites this letter as evidence that Stremlau and Naples were "managing agents" of the corporate Defendants. Defendants' counsel did describe Stremlau and Naples as "managing agents" in the letter, but for the purpose of explaining why it was sufficient to notice their depositions as opposed to forcing Plaintiff to issue subpoenas for their deposition testimony. Defendants contend the evidence should be stricken because it is not relevant and is being mischaracterized by the Plaintiff for purposes of proving Defendants' liability. Also, they contend that any possible probative value of the exhibit is outweighed by the dangers of unfair prejudice, confusion, misleading the jury, and wasting time.

It is well within the discretion of the court to strike purported evidence that does not meet the standards of admissible evidence. *See*, *e.g.*, *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). Evidence is generally admissible so long as the evidence does not offend the United States Constitution, a

federal statute, the federal rules of evidence or any other rules prescribed by the United States Supreme Court. Fed. R. Evid. 402. Evidence is relevant when it has a tendency to make any fact that is of consequence in determining an issue more or less probable. Fed. R. Evid. 401.

The Court finds the issue of whether Naples and Stremlau are "managing agents" of the Defendants to be of no consequence to this action. Plaintiff's claim that her discussions with and interrogations of Naples and Stremlau constituted internal reports of misconduct is unsupported by the evidence presented. Plaintiff was clearly in the process of figuring out whether anything illegal was actually occurring when she interacted with Naples and Stremlau, not reporting a crystallized suspicion of misconduct. (*See, e.g.*, Docs. 86-9 at 28, 86-7 at 49). The evidence shows Plaintiff was looking for confirmation of her suspicions and more evidence before actually making a formal complaint to authorities. She even testified that she did not consider her interactions with Naples and Stremlau to be reporting activity until well after this lawsuit was initiated. (Doc. 86-9 at 20).

Furthermore, the designation of "managing agents" versus simple employees has no significance. It is already established Naples and Stremlau stood in positions relative to Martin such that a jury could believe Martin found out from them that Plaintiff was gearing up to divulge her suspicions to authorities or in the case of the State's Attorney's Office, had already done so. Thus, there is no question Naples and Stremlau were employees of Defendants and maintained communication with Defendant Martin, so their further designation as "managing agents" means nothing.

This Court generally disfavors motions to strike, especially within the context of summary judgment because they tend to be unnecessary and impede disposition of the case. *T.G. ex rel. T.G. v. Midland Sch. Dist. 7*, 848 F. Supp. 2d 902, 909 (C.D. Ill. 2012); *Sun v. Bd. of Trs. of Univ. of Ill.*, 429 F.Supp.2d 1002, 1030 (C.D. Ill. 2006)) ("best practice is to deny motions to strike related to a motion for summary judgment"); *see also Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2006). If a factual proposition is made and it is of no consequence to the action, the Court will generally disregard it instead of striking it. That is what the Court will do here. There is nothing *per se* improper with the exhibit; it simply is being used to support a purported fact that is not of consequence to the action and so the Court will disregard it. Therefore, the motion to strike (Doc. 89) is denied.

## CONCLUSION

For the reasons stated above, Defendants' "Motion For Partial Summary Judgment (as to Counts VII, VIII and IX of the Plaintiff's Second Amended Complaint)" (Doc. 80) and Motion to Strike (Doc. 89) are DENIED.

So Ordered.

Entered this <u>28th</u> day of August, 2017.

                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                      United States Senior District Judge