# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| RHONDA S. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-1262 |
| | ) | |
| MERLE PHARMACY, INC., CENTRAL | ) | Honorable Joe B. McDade |
| ILLINOIS MEDICAL EQUIPMENT, | ) | |
| INC., AND WILLIAM M. MARTIN, | ) | |
| | ) | |
| Defendants. | ) | |

# O P I N I O N & O R D E R

Before the Court is the Plaintiff's "Motion For Partial Summary Judgment" (Doc. 81), in which Plaintiff argues that summary judgment is appropriate with respect to the wage law claims (Counts I, III, and VI) of the Second Amended Complaint (Doc. 36) on the basis that the Defendants cannot produce any evidence sufficient to demonstrate that there is a genuine dispute. Also before the Court is Defendants' "Motion To Strike Certain Exhibits To The Plaintiff's Motion For Partial Summary Judgment" (Doc. 84) and "Motion For Leave To File Reply To Plaintiff's Response To Defendants' Motion To Strike Certain Exhibits To Plaintiff's Motion For Partial Summary Judgment" (Doc. 94).

For the reasons given below, Plaintiff's Motion for Partial Summary Judgment (Doc. 81) is GRANTED in part and DENIED in part. Defendants' "Motion To Strike Certain Exhibits To The Plaintiff's Motion For Partial Summary Judgment" (Doc. 84) is DENIED. Defendants' "Motion For Leave To File Reply To Plaintiff's Response To

Defendants' Motion To Strike Certain Exhibits To Plaintiff's Motion For Partial Summary Judgment" (Doc. 94) is GRANTED.

## BACKGROUND

The operative complaint in this matter, the Second Amended Complaint (Doc. 36), brings three counts relevant to the disposition of the motions *sub judice*. Count I alleges violation of the federal Fair Labor Standards Act, 29 U.S.C. § 207 *et. seq.* (the "FLSA") for Defendants' alleged failure to pay Plaintiff overtime compensation for hours she worked in excess of forty per workweek. Count III alleges violation of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et. seq.* (the "IMWL") for the same conduct. Count VI alleges violation of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et. seq.* (the "IWPCA") for the Defendants' alleged failure to pay Plaintiff vacation compensation she earned. The other counts of the Second Amended Complaint were either dismissed (Counts II, IV, and Count V) (*see* Doc. 21) or deal with retaliation and are not relevant to the disposition of the motions *sub judice* (Counts VII, VIII, and IX). Those counts will not be discussed any further.

Plaintiff was employed by Merle Pharmacy ("Merle") and Central Illinois Medical Equipment ("CIME") from on or about November 2004 until July 29, 2014, when she was fired. (Doc. 36 at 3). During the relevant timeframe, which the parties agree ranges from June 26, 2012 to July 29, 2014 for purposes of this litigation, Defendants Merle and CIME were Plaintiff's "employers" within the meaning of the FLSA, IMWL, and IWPCA. (Doc. 85 at 2). Defendant William Martin was the President of both Merle and CIME and controlled the operations of both, including determining all employment policies and payment of employees. (Doc. 85 at 3).

Defendants Merle and CIME shared a single work location. (Doc. 85 at 25). Plaintiff worked for both Merle and CIME as a full-time, hourly paid employee during the relevant timeframe. (Doc. 85 at 3). Plaintiff was paid through a weekly payroll with the pay period lasting from Friday to the following Thursday. (Doc. 85 at 3). Defendants Merle and CIME generally operated Monday through Friday, 9:00 AM to 6:00 PM, and Saturday 9:00 AM – 1:00 PM.[1] Plaintiff and other employees rotated who worked after 5:00 PM each day during the week, as well as who worked on Saturdays. (Doc. 85 at 4). It does not appear that Plaintiff was ever paid any overtime compensation, although there is a dispute over the nature of a $200 payment Martin gave Plaintiff after she complained about not being paid enough.

Defendants claim they do not know whether Plaintiff has ever worked more than forty hours per week from June 2012 through the date of termination. (Doc. 85 at 4). They contend that because they directed their employees to not work in excess of forty hours a week, plaintiff must not have done so. Their policy was for their employees to keep track of their own time and adjust their own schedules to ensure they did not work more than forty hours in a given workweek. Defendants have some records of Plaintiff's earnings that were made on a weekly basis. (Doc. 85 at 5).

Plaintiff requested Defendants to provide her with her payroll information on several occasions. (Doc. 85 at 25). No employee of the Defendants, including Plaintiff, was provided an itemized statement of deductions from their wages for each pay period. (Doc. 85 at 25). Defendants did not regularly provide Plaintiff with a paystub

---

[1] The Defendants dispute this fact only to the extent that "at some point Merle/CIME changed their business hours Monday through Friday to 9:00 AM to 5:30 PM." (*See* Doc. 85 at 10).

along with her paycheck. (Doc. 85 at 26). Neither Merle nor CIME recorded time worked after 5 PM by any employee. (Doc. 85 at 26). During the relevant timeframe, Defendants records do not identify how many hours Plaintiff worked in a day. (Doc. 85 at 26).

Defendants Merle and CIME always had the same vacation policies throughout the time that Plaintiff was employed. (Doc. 85 at 5.) Defendants paid Plaintiff for two vacation days when they issued her final paycheck. (Doc. 85 at 5). Defendants were aware of laws concerning an employer's obligation to pay vacation time. (Doc. 85 at 5).

On May 30, 2017, Plaintiff filed a Motion for Partial Summary Judgment. (Doc. 81). Plaintiff seeks summary judgment on Counts I (failure to pay overtime compensation under the FLSA), III (failure to pay overtime compensation under the IMWL), and VI (failure to pay earned vacation compensation under the IWPCA) based on the failure of the Defendants to be able to produce evidence to demonstrate a genuine dispute as to any issue material to the claims. Plaintiff contends that from June 26, 2012 to July 29, 2014, she worked in excess of forty hours per week and that Defendants failed to pay overtime wages in violation of the FLSA and IMWL. (Doc. 81 at 1-2). Plaintiff also contends that Defendants failed to pay all of Plaintiff's accrued and unused vacation time in violation of the IWPCA. (Doc. 81 at 2). On July 5, 2017, Defendants filed their response on this issue. (Doc. 85). Plaintiff filed her reply on July 27, 2017. (Doc. 93). Therefore, the matter is fully briefed and ready for determination.

## LEGAL STANDARDS

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may demonstrate the absence of a genuine dispute of material fact by citing to admissible evidence, or by showing that the non-movant cannot produce admissible evidence to support a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Upon such a showing by the movant, the non-movant may not simply rest on his or her allegations in the complaint. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (internal quotations and citation omitted); Fed. R. Civ. P. 56(c)(1). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson*, 477 U.S. at 249-50.

**ANALYSIS**

I.    O<span style="font-variant:small-caps">VERTIME PAY</span>

    **A.    Liability**

Plaintiff claims that she is entitled to summary judgment on her overtime pay claims under the FLSA and the IMWL essentially because the Defendants cannot dispute that she worked in excess of forty hours any pay period between June, 2012 and July, 2014. (Doc. 81 at 14). The FLSA provides, in relevant part, that: "[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 209(a)(1). The IMWL provides an identical reading that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed." 820 Ill. Comp. Stat. 105/4a(1). The IMLW parallels the FLSA and the same analysis generally applies to both statutes. *See*, *e.g.*, *Haynes v. Tru–Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. Ct. 4th Dist. 1987); *Zampos v. W & E Communications, Inc.*, 970 F. Supp. 2d 794, 806 (N.D. Ill. 2013).

Count I of the Second Amended Complaint (Doc. 36) is that Defendants failed to pay Plaintiff for hours she worked in excess of forty in a single work week as required by the FLSA, 29 U.S.C. § 207(a). (Doc. 36 at 7). Count III of the Second Amended Complaint is that Defendants failed to pay Plaintiff for hours she worked in excess of forty in a single work week as required by the IMWL, 820 Ill. Comp. Stat.

6

105/4a(1). (Doc. 36 at 8). The employee bears the burden of proving that he performed the overtime work for which he claims he was not compensated. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011). That initial burden is neither supplanted nor otherwise lessened simply because the employer failed to keep adequate records of the employee's time. However, in instances where the employee establishes that the FLSA was indeed violated and the employer has failed to keep adequate records of the employee's hours as required by the FLSA, the plaintiff's burden to prove damages is significantly lessened and she need only produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *See, e.g.*, *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008) citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), superseded by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005).

Plaintiff has evidence that she worked in excess of forty hours per week. First, she provides her own testimony and recollections that she did and that she was instructed to do so by Martin. Second, she points to Merle's and CIME's hours of operation, which were between the hours of 9:00 AM and 6:00 PM (or 5:30 PM, as the case may be) Mondays through Fridays, and from 9:00 AM to 1:00 PM on Saturdays until at some point Saturday hours changed to 9:00 AM until 12:00 PM. Third, Plaintiff points to Merle's and CIME's policy that employees were expected to work until 6:00 pm several days per week and at least one Saturday a month. Fourth, she points to Merle's and CIME's policy to not enforce any set times for breaks or lunch. She testified that she did not take breaks during the workday. Fifth, there is ample

evidence Merle and CIME had a policy of not paying overtime wages but instead, directing full-time employees who were going to exceed forty hours for a week to take off a commensurate amount of time to offset the time that would have been in excess of the forty hours, although Defendants generally left it to the employees to monitor their own hours. Sixth, Defendant Martin conceded that it was understood that if one was to work on a Saturday, one was going to work more than forty hours a week and in such instances, one was to take off a commensurate amount of time in the days prior to or after that Saturday to offset the time. (Doc. 81-4 at 49). Seventh, Plaintiff points to the Defendants' Response to Amended-Formal Notice of Wage Claim (Doc. 81-17 at 2), where Defendants admit that Plaintiff worked overtime hours in the period between 2008 and 2014. Eighth, Plaintiff points to the testimony of Nancy Naples, a Merle employee who had an office next door to Defendant Martin's office, who testified at her deposition that between 2013 and her termination, Plaintiff was disciplined[2] by Martin for failing to take off hours during the same workweek to make up for excess hours she had worked on previous days. (Doc. 81-5 at 18-19). Ninth, Plaintiff also presents Martin's own testimony that he recalled some employees, possibly Plaintiff, were accumulating overtime hours and not taking commensurate hours off during the applicable work week to offset those hours. (Doc. 81-2 at 10). Lastly, Plaintiff has produced the Defendants' written policy that they admit was in force through the relevant time period. (Doc. 81-11). The policy states in a section labeled "OVERTIME": "generally there is no paid overtime however comp time is

_____

[2] Naples' use of the term "disciplined" seems to mean nothing more than a verbal reprimand. (Doc. 86-7 at 19).

afforded when earned and permitted by owner." In a section labeled "VACATION," the policy also provides: "Comp time is accumulated for all time put in over 40 hours per week."

The Court finds there is overwhelming unrebutted evidence that Plaintiff worked overtime hours at times during the period between 2012 and 2014, such that the issue of liability is foreclosed as a matter of law and summary judgment is appropriate.

One of the most damning pieces of evidence against Defendants is their admission that Plaintiff worked overtime hours in the period between 2008 and 2014. This admission appears in a document submitted to the Illinois Department of Labor called "Response to Amended-Formal Notice of Wage Claim" in which Defendants state that during 2008 through 2014, Plaintiff "received and [took] comp time for overtime hours pursuant to the employers' policy." (Doc. 81-17 at 2). The Defendants do not rebut this. Incredibly, Defendants regard this as a disputed "immaterial fact" and argue that it does "not provide support for or against the Plaintiff's overtime claims." (Doc. 85 at 19).

The Defendants believe their admission is immaterial because they claim their definition of the term "comp time", short for "compensatory time", does not mean what the FLSA regulations take the term to mean. Their argument is without merit. Private employers, such as Merle and CIME, cannot compensate their employees who perform overtime work—more than forty hours in a workweek—with compensatory time off; such arrangements may only be utilized by public agency employers. *See* 29 U.S.C. § 207(o)(1). Characterizing the excess time as "comp time", as Defendants do

in their deposition testimony and their policies, or "flex time", as Defendants' counsel do in their submissions to the Court, is immaterial and a futile exercise in semantical obfuscation.

If one works in excess of forty hours in a single workweek and then later takes commensurate time off in a subsequent workweek, then that means such a person worked in excess of forty hours in the first workweek and therefore, was entitled to be paid not less than one and one-half times the regular rate at which the person was employed for that time in excess of forty hours during that first workweek. An employer can call it flex time, comp time, or whatever the employer wants, but the obligation to pay an employee who works more than forty hours in a given workweek[3] remains. This is so, even if the employee's actions were in blatant disregard of an employer's express rules not to perform overtime. *See Castagnoli v. The Ctr. for Neurosciences, LLC*, No. 13-4055, 2015 WL 9450815, at *7 (C.D. Ill. Dec. 23, 2015) (recognizing that under applicable labor regulations, the mere promulgation of a rule prohibiting overtime is no excuse for not paying earned overtime wages); 29 C.F.R. § 785.13.

Contrary to Defendants' assertions, the Court finds their statement to the Illinois Department of Labor that Plaintiff "received and [took] comp time for overtime hours pursuant to the employers' policy" during 2008 through 2014 absolutely relevant and material in that it establishes that 1) Plaintiff worked

---

[3] A workweek is a fixed and regularly recurring period of 168 hours -- seven consecutive 24-hour periods. 29 C.F.R. § 778.105. For Merle and CIME, their employees' workweek was Friday through Thursday. (Doc. 81 at 3, Doc. 81-5 at 17).

overtime hours during the period of time between 2008 and 2014 and 2) Defendants knew it. However, since the time period at issue in the Defendants' Response to Amended-Formal Notice of Wage Claim (Doc. 81-17 at 2) is between 2008 and 2014, this evidence does not conclusively prove Plaintiff worked overtime hours during the specific period of June, 2012 and her termination in July, 2014. In simpler terms, the two periods do not match up perfectly, so there is still room for dispute.

However, there is no disputing the testimony of Nancy Naples, which establishes that Plaintiff must have worked hours in excess of forty in a single workweek because she testified that Plaintiff was disciplined for failing to take off hours during the same workweek to make up for excess hours she had worked on previous days. Nothing in the record controverts or otherwise provides any reason to disbelieve this testimony. (Doc. 81-5 at 18-19)[4]. Naples' testimony is further corroborated by Martin's own testimony that he recalled some employees, possibly Plaintiff, were accumulating overtime hours and not taking commensurate hours of

---

[4] Defendants' attempt to deny this fact by selectively cherry-picking parts of Naples' testimony is alarming. It is clear from a complete read of the relevant passages of the transcript that Naples testified that Plaintiff was disciplined for failing to take time off within the workweek to offset excess time she worked earlier in the workweek. For example, the following exchange proves the point:
Q. Do you know whether or not [Plaintiff] was ever disciplined?
A. Yeah.
Q. All right. What was she disciplined about?
A. Taking hours outside of the time that she was supposed to.
Q. What does that mean?
A. Taking hours the -- the comp time hours that we spoke of earlier, not taking them in the timeframe that was required.
(Doc. 81-5 at 19). Moreover, the Defendants' assertion that "Martin stat[ed] the Plaintiff was not disciplined for anything prior to the termination of her employment with Merle and CIME" is not supported. The cited deposition testimony reveals Martin made no such affirmative statement but rather simply responded that he did not recall disciplining the Plaintiff. (Doc. 81-4 at 18).

during an applicable work week prior to December 31, 2013. (Doc. 81-2 at 9-10 (Transcript of May 11, 2017 Deposition)). No other reasonable conclusion can be drawn from the fact that Plaintiff was disciplined for not taking her "comp time hours" in the timeframe that was required other than that she indeed worked in excess of forty hours in workweek. If that is not enough, then the Defendant's vacation policy surely provides more uncontroverted evidence that the Defendants expected their employees to work in excess of forty hours a week at times. The policy provides: "Comp time is accumulated for all time put in over 40 hours per week." (Doc. 81-11 at 3).

A successful plaintiff must also prove that her employer knew or should have known about her overtime work, as employers have no duty to compensate employees for work they neither knew nor should not have known about. *Kellar*, 664 F.3d at 177. Although Martin testifies now that he does not recall ever disciplining Plaintiff, he does not affirmatively deny it. Naples' testimony that he did so discipline Plaintiff— specifically for accumulating overtime hours and not taking commensurate hours off during the appropriate timeframe—is uncontroverted. Given this evidence Martin cannot seriously be taken to have not known Plaintiff was working more than forty hours a week at certain times in the relevant timeframe from 2012 until 2014, even if he truly does not recall it now. Moreover, he concedes remembering that some employees, possibly Plaintiff, were accumulating overtime hours and not taking commensurate hours off during the applicable work week to offset those hours. (Doc. 81-2 at 10). Furthermore, Defendants' own records show Plaintiff was never paid for any purported overtime. Thus, at minimum, even though the specific instances have

not been conclusively identified, there is more than enough uncontroverted evidence to find that Plaintiff worked in excess of forty hours a workweek, that her workweeks were from Fridays through Thursdays, and that she was not compensated for the time she worked in excess of forty hours in a given workweek.

For these reasons, the Court finds that Plaintiff has established that she worked in excess of forty during some of the Defendants' seven day pay periods in 2012 through 2014 and was not compensated for them. Now the relevant question before the Court is whether Plaintiff can establish the specific hours she worked as a matter of law and what she is owed.

### B.      Damages

In this case, there is substantial evidence that the Defendants failed to maintain adequate records of their employee's hours worked. Since Defendants disciplined Plaintiff for accumulating overtime hours and not taking commensurate hours off during the appropriate timeframe, they had to have known about the overtime work yet they have no records of such work. Martin testified that if there ever was an official calendar kept by Defendants that recorded vacation days or personal days or otherwise recorded time off, it would have been discarded at the end of the calendar year. (Doc. 81-2 at 17-18). Defendants kept no other records of their employees' hours. Defendants did provide their employees with calendars but it does not appear that these calendars were scrutinized or otherwise utilized by the Defendants in recording time. So the only records available that purport to be accurate recordings of Plaintiff's overtime hours are her own personal calendars and calendars provided by the Defendants but maintained by the employees.

"Where the employee alleges that his employer kept inaccurate records, he has carried out his burden … if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. At that point, [t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Melton v. Tippecanoe Cty.*, 838 F.3d 814, 818 (7th Cir. 2016) citing *Anderson*, 328 U.S. at 687–88 (citations and quotation marks omitted). However, the general rules governing summary judgment remain in place and "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *See Anderson*, 477 U.S. at 255.

Plaintiff has submitted an affidavit in which she swears she maintained monthly calendars that were near her desk at work during the course of her employment. (Doc. 81-7). One set of such calendars is Exhibit 36, which is attached to the motion for partial summary judgment. (Doc. 81-16). On these calendars, Plaintiff would write her anticipated schedule to work after 5 PM and/or on Saturdays, as well as occasions that that she anticipated or did take time off of work. She swears she made all the entries on these calendars at or near the time of the event recorded. She admits she was not always able to actually use the time she had marked for purposes of taking off.

Plaintiff also submitted Exhibits 12(a) and 12(b), which are her personal calendars on which she noted the times she anticipated and actually worked after 5

PM as well as on Saturdays. (Docs. 81-13 and 81-14). She swears she made all entries at or near the time of the event recorded. Plaintiff's practice was to record all of the time that she took off from work by denoting a subtraction of time, e.g., "-2 hours" or some notation indicating my actual absence. Plaintiff states that she has reviewed each day of her entries on the 2012 and 2013 calendars, Exhibit 12(a) and 12(b) to identify errors, particularly time she had planned to take off but was unable to do so.

Lastly, Plaintiff submitted Exhibit J (Doc. 81-10) also, which is a summary chart of the amount of time she claims to have actually worked after 5 PM or on Saturday, as well as time off that she took from work. The information in Exhibit J is derived from Exhibits 36, 12(a) and 12(b). Plaintiff states that the chart encompasses corrections of any errors she discovered during her review of Exhibits 36, 12(a) and 12(b) and reflects a reasonably accurate estimation of the total overtime and compensatory time off she took between June 26, 2012 and July 29, 2014. The Defendants have moved to strike Exhibit J on the grounds that it contains information that was not so voluminous that the Court could not conveniently examine it itself; that it contains information not included on the underlying documents; and that it was not previously disclosed to the Defendants. The Court will discuss the motion to strike later.

The Defendants have no evidence with which to dispute Exhibits 36, 12(a), and 12(b). Instead, they can only point to the credibility of the Plaintiff as a reason to discount these exhibits. Although it is a very close question given the diminished burden of proof Plaintiff enjoys, the Court believes the issue of damages, more specifically the reliability of the calendars, should go to the jury. Plaintiff created

some of these documents herself and they are self-serving by their very nature. More importantly, deposition testimony from Plaintiff's co-workers and an exchange between Plaintiff and one of Martin's former employers demonstrates that Plaintiff harbored serious disdain against Martin. (Docs. 86-7 at 46, 86-9 at 17). Whether the testimony put forth in an affidavit or in another self-serving piece of evidence should be disbelieved is a credibility question for the factfinder. At a minimum, the Court believes the jury should hear directly from the Plaintiff how and why she maintained these calendars before the Court can utilize them to assess damages. And if they are credited as accurate, then Defendants will be found liable to pay Plaintiff in accordance with the calendars without regard to whether or not Plaintiff can otherwise prove each and every instance of alleged overtime work specifically.

The Court has identified Plaintiff's apparent disdain for Martin as one of the reasons it declines to simply infer that the calendars are unassailably correct for purposes of determining the proper amount of damages. Plaintiff views the Defendants' attack on credibility as an improper attack on the Plaintiff's character for truthfulness, but the Court sees it as an issue of bias. While the ultimate goal of demonstrating bias and attacking character for truthfulness is the same—to cast aspersion on a witness and their testimony—demonstrating one's bias and attacking one's character for truthfulness are separate issues. *United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996) ("Bias is one of the five acceptable methods of attacking the credibility of a witness's testimony: (1) attacking the witness's general character for truthfulness; (2) showing that, prior to trial, the witness has made statements inconsistent with his testimony; (3) showing that the witness is biased;

(4) showing that the witness has an impaired capacity to perceive, recall, or relate the event about which he is testifying; and (5) contradicting the substance of the witness's testimony. Wright & Gold, FEDERAL PRACTICE AND PROCEDURE § 6094 (1990).... The admissibility of evidence regarding a witness's bias, diminished capacity, and contradictions in his testimony is not specifically addressed by the Rules, and thus admissibility is limited only by the relevance standard of Rule 402. Wright & Gold, FEDERAL PRACTICE AND PROCEDURE § 6092 (1990)."). The Court does not see any reason to withhold evidence of Plaintiff's disdain for Martin from the jury according to Federal Rule of Evidence 402.

Another reason the Court declines to simply infer that the calendars are unassailably correct for purposes of summary judgment is that the Court does not accept as an undisputed fact that Plaintiff was subject to a policy that <u>required</u> overtime during the time period at issue. It seems that Defendants told their employees to not take overtime during a seven day period despite the hours of operation of the facilities. The Defendants have asserted that their policy was for employees to adjust their schedules within the seven day period so as not to exceed forty for the entire period. It also seems Plaintiff flaunted that policy and at times was reprimanded for doing so. Although these facts do not constitute an absolution of the Defendant's requirement to pay proper overtime wages, they could impact a factfinder's assessment of how likely it was for Plaintiff to have actually failed

throughout her employment to adjust her schedule so she did not exceed forty hours for an entire given seven day period.[5]

Another reason to question the accuracy of Exhibits 12(a) and 12 (b) specifically is Plaintiff's confusing deposition testimony that her personal calendars do not actually show the number of hours of overtime that she is claiming in this case. (Doc. 86-9 at 39). When given the chance to clarify her answer, Plaintiff stated that because she knew her schedule. The Court does not understand that response to be an explanation that forecloses genuine dispute.

One may be tempted to inquire why, given the Court's finding of liability against the Defendants and the precedent that a plaintiff whose employer kept inadequate records need only show damages to a degree of just and reasonable certainty, it even matters if the calendars are shown to not be unassailably accurate information when they are the only information available. The answer is that courts are empowered to engage in estimation when they find that a successful FLSA plaintiff's contentions as to the hours they worked in overtime may be exaggerated.[6] *See*, *e.g.*, *Urnikis-Negro v. Am. Family Prop. Servs., Inc.*, No. 06 C 6014, 2008 WL 5539823, at *10–11 (N.D. Ill. July 21, 2008), aff'd sub nom. *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010).

---

[5] The Court recognizes that the vacation policy taken on its face would explain why one would think accumulating compensatory hours was fine given that it states "Comp time is accumulated for all time put in over 40 hours per week." (Doc. 81-11 at 3).

[6] The Court is compelled to make clear it is not making a finding that Plaintiff's contentions are exaggerated.

For these reasons, the Court concludes that the issue of the accuracy of the calendars must go to the jury. Thus, summary judgment is denied as to damages.

## II.    Willfulness

The FLSA carries greater penalties for willful violations of its provisions. For example, section 255(a) of Title 29 of the United States Code provides that "a cause of action arising out of a willful violation [of the FLSA] may be commenced within three years after the cause of action accrued," which is an extra year beyond the normal two year statute of limitations. It is the plaintiff's responsibility to prove that a violation was willful such that the three year statute of limitations should apply. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) (recognizing that under the FLSA, "a two-year period is the norm, a three-year period the exception, and the burden is on the employee to show that the violation was 'willful.'"). Section 260 of Title 29 of the United States Code provides that liquidated damages, which in this case refers to an equal amount of the unpaid overtime compensation, *see* 29 U.S.C. § 216(b), are the norm for failures to pay overtime compensation unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the" FLSA. *Walton*, 786 F.2d at 310. This results in successful plaintiffs who were denied overtime compensation being awarded double the unpaid compensation.

### A.    Three year statute of limitations under 29 U.S.C. § 255(a)

A violation will be found to be willful for purposes of 29 U.S.C. § 255(a) only if the plaintiff establishes "that the employer either knew or showed reckless disregard

for the matter of whether its conduct was prohibited by the" FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). In *Bankston v. State of Illinois*, 69 F.3d 1249, 1254 (1995), the Seventh Circuit squarely instructed that "[i]t is the jury's province to decide which limitations period, two or three years, applies in light of the [plaintiff's] evidence that the defendants acted willfully."

The Court cannot conclude as a matter of law that Defendants acted willfully. Even if the Court ignored *Bankston*'s instruction that it is the jury's task to decide whether a defendant acted willfully for purposes of Section 255(a), it would still find that there is insufficient evidence before the Court to conclude as a matter of law that Defendants acted willfully.

In *Walton*, the Seventh Circuit reviewed whether a district court's use of a so-called "in the picture" standard was appropriate when determining whether to extend the statute of limitations under section 255(a) and whether to all liquidated damages under section 260. 786 F.2d at 308. Under that standard, the employer's mere knowledge that the FLSA was "in the picture" was enough to warrant extending the statute of limitations. *Id*. The *Walton* court rejected the "in the picture standard" and remanded the matter to the district court with the instruction to determine whether the defendant there "showed a disregard for the governing statute and an indifference to its requirements." *Id*. at 311 citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985).

This Court has not seen anything in this case that establishes beyond dispute that Defendants even knew of the requirements of the FLSA beyond paying the minimum wage and compensation for accumulated vacation days. For example, the

Court did not see evidence that Defendants were ever put on notice that their comp time policy was unlawful. The *Walton* court emphasized that Section 255(a)'s extended statute of limitations was not the norm and so a plaintiff must do more than showing that the defendant merely knew of the FLSA. Thus, Defendants concession that they were aware there were laws concerning paying vacation time does nothing to make them any more culpable than past defendants who knew the FLSA was in the picture. Martin testified at his deposition that no one did any research into whether his companies' policies regarding comp time were legitimate and he still believed it was permissible for private employers to use comp time schemes. (Doc. 81-4 at 49).

In short, the Court cannot conclude as a matter of law that Defendants acted willfully for purposes of 29 U.S.C. § 255(a).

### B.   Liquidated Damages under 29 U.S.C. § 260

Unlike the extended statute of limitations under § 255(a), liquidated damages under § 260 are the norm. A defendant liable for failing to pay proper compensation under § 207 may only avoid liquidated damages if she demonstrates to the Court that she acted in good faith and had reasonable grounds for her actions. The Court holds as a matter of law that Defendants are liable for liquidated damages for their failures to pay Plaintiff proper overtime compensation for the instances in which she worked over forty hours in a given seven day workweek.

The Court makes this finding because no matter what their subjective intentions, Defendants admit that they failed to make any inquiry, let alone a reasonable one, into whether their actions violated the FLSA. In attempting to avoid

liquidated damages, it is no defense to plead ignorance of the FLSA and its requirements. *Dominici v. Bd. of Educ.*, 881 F. Supp. 315, 322 (N.D. Ill. 1995) ("For an employer to establish it had objectively reasonably grounds for believing its actions did not violate the FLSA, it must establish that it took affirmative steps to determine FLSA requirements but, nevertheless, violated the FLSA."). The Defendants took no steps to determine their FLSA obligations. Moreover, they employed a vacation policy that violated the FLSA on its face as private employers by mandating that "Comp time is accumulated for all time put in over 40 hours per week."

Instead of pointing to any affirmative actions they allegedly took that would obviate liquidated damages, Defendants focus on facts that are really immaterial. For example, they point out that they instructed their employees to not work more than forty hours a week; that Plaintiff willingly participated in their flexible schedule practice and that she never provided them with documentation supporting her claims of overtime work. These points do nothing to absolve the Defendants from their responsibility to pay Plaintiff for time she worked in excess of forty hours a week. And once again, we know there were instances where she worked in excess of forty hours a week because her co-worker, Naples, testified that there were instances when she was disciplined for doing so. Even if an employee works in excess of forty hours a week in blatant disregard for the official policy, the employer is still obligated to pay the employee in accordance with the FLSA if the employer knows of the work. Again, not only does her discipline on several occasions demonstrate Defendants knew of her overtime work, but their vacation policy proves it was expected.

In conclusion, the Court finds that there is no evidence that Defendants acted on a reasonable basis in failing to compensate Plaintiff for overtime work she performed in excess of forty hours in a given workweek. Therefore, the Plaintiff's motion for partial summary judgment on the issue of liquidated damages is granted.

### C.     The IMWL

Plaintiff and Defendants agree that the IMWL provides for what both parties refer to as "punitive damages" and also agree that such punitive damages require a finding of willfulness. The Court disagrees.

Plaintiff wrote: "The IMWL provides for punitive damages of 2% of any underpayments 'for each month following the date of payment during which such underpayments remain unpaid.' 820 Ill. Comp. Stat. 105/12(a). Punitive damages are available only if the 'employer's conduct is proven by a preponderance of the evidence to be willful.' *Id.*" (Doc. 81 at 20-21). Defendants wrote: "The IMWL allows for punitive damages for violations, if the plaintiff can prove the employers' conduct was willful." (Doc. 85 at 47). The Court finds that although the IMWL does indeed carry punitive damages, the 2% penalty that Plaintiff seeks does not require one to prove the employer acted willfully under the current version of the statute. Therefore, Plaintiff does not have to prove willfulness to receive the penalty.

An Illinois appellate court and a Northern District of Illinois federal district court that looked at this issue both concluded that under the IMWL employees may not recover punitive damages from employers without first assigning their claims to the Department of Labor for litigation. *Gelb v. Air Con Refrigeration & Heating, Inc.*, 356 Ill. App. 3d 686, 699, 826 N.E.2d 391, 404 (2005); *Palmer v. Great Dane Trailers*,

No. 05 C 1410, 2005 WL 1528255, at *3 (N.D. Ill. June 28, 2005). Those courts concluded that the language of the statute at the time compelled an employee to assign his claim to the Department of Labor for litigation in order to pursue so-called punitive damages. In 2005, when those cases were decided, the statute read as follows:

§ 12. (a) **If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and any agreement between him and his employer to work for less than such wage is no defense to such action.** At the request of the employee or on motion of the Director of Labor, the Department of Labor may make an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to collect such claim, and the employer shall be required to pay the costs incurred in collecting such claim. Every such action shall be brought within 3 years from the date of the underpayment. **Such employer shall be liable to the Department of Labor for 20% of the total employer's underpayment and shall be additionally liable to the employee for punitive damages in the amount of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid.** The Director may promulgate rules for the collection of these penalties. The amount of a penalty may be determined, and the penalty may be assessed, through an administrative hearing. The penalty may be recovered in a civil action brought by the Director of Labor in any circuit court. The penalty shall be imposed in cases in which an employer's conduct is proven by a preponderance of the evidence to be willful. In any such action, the Director of Labor shall be represented by the Attorney General.

2001 Ill. Legis. Serv. P.A. 92-392 (S.B. 281) (WEST) (emphasis added). But the statute has since been amended and currently provides as follows in relevant part:

§ 12. (a) **If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of**

**2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid.** Any agreement between the employee and the employer to work for less than such wage is no defense to such action. At the request of the employee or on motion of the Director of Labor, the Department of Labor may make an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to collect such claim, and the employer shall be required to pay the costs incurred in collecting such claim. Every such action shall be brought within 3 years from the date of the underpayment. **Such employer shall be liable to the Department of Labor for up to 20% of the total employer's underpayment where the employer's conduct is proven by a preponderance of the evidence to be willful, repeated, or with reckless disregard of this Act or any rule adopted under this Act. Such employer shall be additionally liable to the employee for damages in the amount of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid.** These penalties and damages may be recovered in a civil action brought by the Director of Labor in any circuit court. In any such action, the Director of Labor shall be represented by the Attorney General.

820 Ill. Comp. Stat. Ann. 105/12 (effective as of July 14, 2006) (WEST) (emphasis added).

As one should see from reading the two versions, the remedy Plaintiff seeks—2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid—is now part and parcel of the general recovery for one aggrieved under the statute in the very first sentence. It is no longer only obtainable for an employee who assigns her claim to the Department of Labor for litigation. Moreover, in the older version of the statute, the 2% penalty was specifically referred to as punitive damages. "Such employer shall be liable to the Department of Labor for 20% of the total employer's underpayment and <u>shall be additionally liable to the employee for punitive damages in the amount of 2%</u> of the amount of any such underpayments for each month following the date of

payment during which such underpayments remain unpaid." 2001 Ill. Legis. Serv. P.A. 92-392 (S.B. 281) (WEST) (emphasis added). Whereas the current version of the statute separates the 20% penalty due to the Department of Labor from the 2% penalty due to the employee by utilizing separate sentences and seems to associate the willful, repeated, or reckless disregard element with the 20% penalty due to the Department of Labor only. Therefore, the Court concludes there is no need for Plaintiff to show a willful violation of the IMWL in order to obtain an award of damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid in addition to the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court.

### III. Vacation Pay Claim Pursuant to the Illinois Wage Payment and Collection Act

Plaintiff claims Defendants failed to pay her for vacation time she earned and was due at the time of her termination in violation of the IWPCA, 820 Ill. Comp. Stat. 115/1 *et. seq*. The IWPCA provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 Ill. Comp. Stat. 115/5. "[W]henever a contract of employment or employment policy provides for paid vacations, and an employee … is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay . . . ." *Id*.

Plaintiff contends in the Second Amended Complaint that she is owed "at least 5 days of her unused paid vacation benefit by Defendants." (Doc. 36 at 10). However, in her motion for partial summary judgment, Plaintiff makes a conflicting assertion that seems to create a genuine dispute over material facts without regard to the Defendants' contentions. Plaintiff first contends that she had ten vacation days available for her use each year, only used six vacation days before termination and that Defendants paid her proper compensation for two days of vacation time. (Doc. 81 at 21). Based on this, Plaintiff now contends she is "entitled to a minimum of an additional 2 days of vacation pay." (Doc. 81 at 21).

However, Plaintiff later claims "that she only took two 2 ½ days of vacation time in 2014," which would leave seven and one-half days, and is "still owed 5 ½ days" (Doc. 81 at 21-22) since she concedes she was adequately compensated for two of those days. Plaintiff then states that "[w]hether she is owed 2 days or 5 ½ days may be an issue of fact" but contends the Court should enter summary judgment as to liability.

Defendants contend that they do not owe Plaintiff any compensation for accrued vacation days. That was their position in their Response to Amended-Formal Notice of Wage Claim (Doc. 81-17 at 5) and that is their position now. What is new is the assertion that Plaintiff was not a full time employee between March 28, 2009 and August 19, 2011, which Defendants made in an affidavit supplied by Defendant Martin (Doc. 85-5 at ¶ 12). The Court has not found a comparable statement in the Response to Amended-Formal Notice of Wage Claim (Doc. 81-17) or in Martin's deposition testimony.

In a 30(b)(6) deposition, Martin testified as a corporate designee of the entity Defendants that as of 2014, Plaintiff was entitled to ten days of paid vacation. (Doc. 81-2 at 20). There is also a hand written note[7] on which Martin wrote that Plaintiff received one week of paid vacation after having worked full time for one year and that full time employees received ten days paid vacation after five years. (Doc. 81-18). This supports the Plaintiff's claim that she was entitled to ten days of paid vacation after five years of full-time employment at Merle/CIME. In his personal deposition, however, Martin testified that full time employees, such as Plaintiff, were only entitled to ten days of paid vacation after 10 years of full-time employment. (Doc. 81-4 at 50). This is not completely implausible given the vacation policy ambiguously reads "one week of vacation is given for every five years of employment." (Doc. 81-11 at 3).

Finally, the parties also disagree as to the issue of vacation time accrued by Plaintiff during inclement weather. Plaintiff contends that Defendants' policy is to pay their employees when business is closed due to inclement weather. (Doc. 81 at 4). Plaintiff argues that Defendants wrongfully took a full day of vacation time away from her during inclement weather. Defendants contest this assertion and state that it was the Defendants' practice to pay employees when the business was closed due to inclement weather, "*subject to the discretion of the owner, William Martin.*" (Doc. 85 at 6) (emphasis in original).

---

[7] This document is subject to a motion to strike for allegedly being a privileged communication. *See infra* Part V.B.

At the summary judgment stage, the court may not resolve disputed issues of fact; they must be left for resolution at trial. *Anderson*, 477 U.S. at 247-250. The Court finds that the several issues in genuine dispute mentioned above preclude summary judgment here. Therefore, Plaintiff's motion is denied as to the IWPCA claim.

## IV.    Defendant Martin's Personal Liability as to Counts I, III and VI

Plaintiff argues that Defendant Martin must be held joint and severally liable as Plaintiff's "employer" alongside the entity Defendants. Defendants denied in their Answer (Doc. 24 at 4) that MARTIN was an "employer" within the meaning of the FLSA, IMWL, and the IWPCA. Defendants do not address the issue in their Response To Plaintiff's Motion For Partial Summary Judgment (Doc. 85).

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). The IMWL similarly defines an employer as "any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." *See* 802 Ill. Comp. Stat. 105/3(c). The IWPCA states that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 Ill. Comp. Stat. § 115/13. "The word 'employer' is defined broadly enough in the Fair Labor Standards Act … to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Riodan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987). "The FLSA does impose liability as an employer on any person acting directly or indirectly in the interest of

an employer in relation to an employee." *Okoro v. Pyramid 4 Aegis*, 2012 U.S. Dist. LEXIS 5627729 at *29 (E.D. Wis. 2012) (citing 29 U.S.C. § 203(d)) (internal quotation marks omitted).

There is no doubt that Defendant Martin was the President and primary shareholder of Merle and CIME, and controlled the operations of both, including determining all employment policies and how much any employee would be paid. Defendants even admitted these facts. (*See* Doc. 85 at 2-3). The Court finds that there are no genuine disputes as to any material facts and Plaintiff is entitled to summary judgment on this issue. Defendant Martin is jointly and severally liable for damages arising out of the three wage law claims, Counts I, III, and VI.

## V. Defendants' Motion To Strike Exhibit J and 60 and Plaintiff's Request to Strike the Affidavit of William Martin

### A. Exhibit J: Summary of Overtime Hours Worked

Exhibit J (Doc. 81-10) is a summary chart of the amount of overtime Plaintiff claims to have actually worked as well as time off that she took from work. The information in Exhibit J is derived from Exhibits 36, 12(a) and 12(b). Plaintiff states that the chart encompasses corrections of any errors she discovered during her review of Exhibits 36, 12(a) and 12(b) and reflects a reasonably accurate estimation of the total overtime and compensatory time off she took between June 26, 2012 and July 29, 2014. The Defendants have moved to strike Exhibit J on the grounds that it contains information that was not so voluminous that the Court could not conveniently examine it itself; that it contains information not included on the underlying documents; and that it was not previously disclosed to the Defendants.

Arguably, this issue is moot as the Court has already ruled that the underlying documents upon which Exhibit J relies must be determined to be reasonably accurate by the jury before they may be used to calculate the amounts the Defendants owe. *See supra* Part I.B. However, because the parties are undoubtedly heading to trial, the Court will affirm that it does not intend to make Plaintiff present each and every single calendar entry to the Court or the jury for inspection. Doing so would be a waste of time. So, the Court finds that a summary of the information contained in Exhibits 36, 12(a), and 12(b) would be useful to prove the content of the voluminous calendar entries that the Court deems cannot be conveniently examined in court. Moreover, the Court agrees with the Plaintiff that the nature of the underlying data— notations on chronological days in calendars—obviates a need for so-called pin citations, although Plaintiff has already provided such citations.

Defendants also claim that Plaintiff should have disclosed Exhibit J to them under Federal Rule of Civil Procedure 26(a) and it should be excluded pursuant to Rule 37(c)(1), which provides for the automatic exclusion of anything that should have been, but was not, disclosed under Rule 26(a). The Court finds this argument unpersuasive since there is no doubt Defendants had possession of the underlying documents, Exhibits 12(a), (b), and 36, upon which Exhibit J is derived, well in advance of Plaintiff's deposition and in advance of Plaintiff's motion for partial summary judgment.

The clear implication from controlling precedents on the use of summaries under Federal Rule of Evidence 1006 is that where a party has already given the opposing side the documents upon which the proposed summary evidence is based,

Rule 26 concerns are no longer at issue and the party may use the summaries under Rule 1006 at trial or summary judgment as long as it gives the opposing party a reasonable opportunity check the accuracy of the summaries. *Coates v. Johnson & Johnson*, 756 F.2d 524, 555 (7th Cir. 1985); *Fidelity National Title Ins. Co. of New York v. Intercounty National Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir. 2005). It is clear from reading the Plaintiff's deposition that Defendants questioned her extensively about her specific calculations derived from Exhibits 12(a), (b), and 36. Thus, there is no reason to conclude the exhibit should be stricken. For these reasons, the Motion to Strike (Doc. 84) is denied as to Exhibit J.

### B.        Exhibit 60: Handwritten Note of Defendant Martin

Exhibit 60 to Plaintiff's Motion for Partial Summary Judgment is a handwritten note by Defendant Martin. It contains affirmative statements regarding the Plaintiff's vacation time, pay, and overtime policy. The note is dated October 20, 2014. The note does not contain any overt requests for legal advice. It was originally produced to Plaintiff's counsel as part of the Defendants' initial disclosures in November, 2015. In January, 2016 the Defendants referred to this note as a document possessing payroll information for the Plaintiff (Doc. 91-2 at 2). Plaintiff attached a copy of the note to an affidavit used to support a motion for conditional certification of a class in February, 2016. (Doc. 30-4 at 12). Defendants did not object to the use of the note. Then in November, 2016, Plaintiff utilized the note in a deposition of Defendant Martin, who disclaimed remembering what the purpose of the note was but affirmed he did indeed write it except for a single statement: "From Bill 10/20/14." Again, Defendants failed to object to the note or otherwise raise any issue. Finally, in

May, 2011, when Plaintiff tried to use the note in another deposition of Martin, this time as a Rule 30(b)(6) designee, Defendants raised the issue of possible privilege for the first time. The next day, Defendants wrote to Plaintiff's counsel and sought the return of the note on the basis that is was privileged and inadvertently disclosed and pursuant to the terms of a confidentiality agreement. (Doc. 84-1 at 2). Plaintiff responded that even if the note was privileged, any such privilege had long been waived. The Court agrees with Plaintiff.

Even if this note were at one time privileged, such privilege has been waived. Federal Rule of Evidence 502(b) sets out criteria for determining whether a disclosure in a federal proceeding operates as a waiver of the attorney-client privilege. The Rule provides there will be no such waiver if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B)." In determining whether a disclosure was inadvertent, courts look at such factors as "the total number of documents reviewed, the procedures used to review the documents before they were produced, and the actions of producing party after discovering that the documents had been produced." *Heriot v. Byrne*, 257 F.R.D. 645, 658–59 (N.D. Ill. 2009). These common law factors overlap with the requirements of Rule 502(b).

The first factor in the analysis, the total number of documents reviewed, *id.* at 658, weighs in favor of Plaintiff. Plaintiff argues Defendants initially disclosed Exhibit 60 to the Plaintiff in 2015 with 244 other pages. Of the 245 pages, the bulk of the pages were Plaintiff's calendars, personnel file, and record of earnings—all of

which were readily identifiable as non-privileged—which left only sixty-two pages to be reviewed for privilege. Defendants do not contest these assertions. The Court finds that the amount of documents at issue, 245 at worst, sixty-two at best, was not so voluminous as to support an inference that overlooking a document here or there would be reasonable. Cases that found the number of documents reviewed to weigh in favor of the party asserting privilege dealt with thousands of pages, not a mere couple hundred. *See id.* at 659.

The second factor in the analysis, examining what procedures were used to review the documents before they were produced, also weighs in favor of the Plaintiff. Defendants do not provide any explanation as to what they did to review Exhibit 60 or the other documents before disclosing them. Instead, they seek to excuse their disclosure by simply asserting that the nature of the privilege does not appear on the face of the document and they had no knowledge or reason to believe the document was privileged. The Court finds this to be an insufficient excuse. One would think at a minimum, the Defendants would have attempted to discover who authored the document and who was the "Bill" named in the document before disclosing it. But Defendants do not assert that they took even these minimal steps. Therefore, the Court concludes the Defendants have failed to properly explain the procedures used to review the documents before they were produced and consequently, cannot satisfy the second requirement of Rule 502(b).

Arguably, the Defendants efforts to reclaim the document after they learned of its purported privileged nature were satisfactory. After learning of the possible privileged nature of Exhibit 60, Defendants followed reasonable steps of trying to

reclaim the document. However, the Court deems that the failure to apprise the Court of what was done to review the documents before they were produced is of such magnitude in this particular case that the steps taken after the fact are of little significance.

For the reasons given above, if Exhibit 60 was indeed privileged, any such privilege has been lost and the Motion to Strike (Doc. 84) is denied as to Exhibit 60.

**C.    Plaintiff's Request to Strike the Affidavit of William Martin**

Defendants attached an affidavit of Martin (Doc. 85-5) to their response to Plaintiff's Motion for Partial Summary Judgment (Doc. 85) in which Martin purports to aver to certain facts encompassing Plaintiff's accumulated vacation days. He states that he reviewed certain documents and concludes that Plaintiff is not owed any vacation compensation because she actually took more vacation days than the days allotted. (Doc. 85-5). These totals differ from those presented by the Defendants in their Response to Amended-Formal Notice of Wage Claim (Doc. 81-17). Martin avers that the numbers are different because his counsel at the time made different assumptions than he has in his instant affidavit but does not bother to explain what those assumptions were. He also states in arriving at his calculations he reviewed certain documents. These documents appear to include documents that were not reviewed when Defendants drafted their Response to Amended-Formal Notice of Wage Claim. (Compare Doc. 85-5 at 4 ("In providing the information contained in paragraphs 5 through 19, I reviewed: MerleCIME.000140-143, MerleCIME.000337-401, MerleCIME.000412-461, and MerleCIME.000469-499, which is attached as Exhibit A.") with Doc. 81-17 at 4 ("All of these days are documented in Exhibits C, E,

F, and G attached hereto.")). The affidavit also contains a new assertion that Plaintiff was actually a part-time employee for better than two years. (Doc. 85-5 at 3 ("From March 28, 2009 through August 19, 2011, the Plaintiff worked for Merle and/or ClME on a part time basis; and, thus, was not entitled to any vacation benefits.")).

The Court agrees with Plaintiff that Defendants should have updated their responses to the Plaintiff's Interrogatory No. 4 and Supplemental Document Request No. 8 with the documents Martin purports to have reviewed in his affidavit. Interrogatory No. 4 asked Defendants to identify each instance Plaintiff allegedly took time off and Supplemental Document Request No. 8 requested records of such instances. However, the Court does not believe striking the affidavit of Martin (Doc. 85-5) is necessary since there is no allegation that Martin relied upon any documents that were not previously shared through discovery. Moreover, despite his inconsistent deposition testimony, it is not impossible that after his deposition Martin reviewed more documents and came to the conclusions he offered in the affidavit. Although the Court views the new assertion that Plaintiff was not a full-time employee for that two-year stretch with concern, since Martin is declaring under penalty of perjury that his statements are true, the Court will leave the matter to the jury to decide whether such statement is true.

Lastly, striking the affidavit is not necessary because nothing presented in it swayed the Court to rule as it did. The Court identified other factual disputes that persuaded the Court not to grant summary judgment on the IWPCA claim. *See supra* Part III. For the foregoing reasons, Plaintiff's request to strike Martin's affidavit (Doc. 85-5) is denied.

# CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Partial Summary Judgment (Doc. 81) is GRANTED in part and DENIED in part. Defendants' "Motion To Strike Certain Exhibits To The Plaintiff's Motion For Partial Summary Judgment" (Doc. 84) is DENIED. Defendants' "Motion For Leave To File Reply To Plaintiff's Response To Defendants' Motion To Strike Certain Exhibits To Plaintiff's Motion For Partial Summary Judgment" (Doc. 94) is GRANTED.

IT IS THEREFORE ORDERED:

1) Summary Judgment is granted to Plaintiff on Counts I (FLSA claim) and III (IMWL claim) of the Second Amended Compliant as to liability.

2) The issue of damages for Defendants' violations of Counts I and III shall proceed to jury, who shall be requested to find whether the Plaintiff's calendar entries are credible or not credible. While Defendants shall be allowed to put the Plaintiff's bias before the jury they shall not be allowed to inquire into her character for truthfulness.

3) Liquidated damages shall be awarded to Plaintiff for violation of Count I.

4) The Plaintiff is entitled to damages for the Defendants' violation of Count III in the amount of two percent of the amount of the underpayments for each month following the date of payment during which such underpayments remained unpaid.

5) The jury shall be questioned as to whether they deem the Defendants acted willfully; the answer will determine whether the three year statute of limitations under 29 U.S.C. § 255(a) should apply to this case.

6) Summary Judgment is DENIED as to Count VI of the Second Amended Complaint.

7) Defendant William Martin shall be jointly and severally liable for the violations of Counts I and III, as well as Count VI, should the jury find for Plaintiff on that claim.

8) This case is currently set for a final pretrial conference on September 13, 2017 at 1:15 PM and jury trial on September 25, 2017 at 9:00 AM.

**9)** The Court refers the parties to Local Rule 16.1 as they prepare for the final pretrial conference. Under that Rule, the parties must prepare an agreed proposed pretrial order.

**10)**    Though Local Rule 16.1 provides that the proposed order is typically to be submitted to the Court at the final pretrial conference, such proposed order will in this case be due one week prior to the conference. The parties are specifically prohibited from attempting to reassert arguments that have already been rejected by the Court, as such matters are not appropriate in a pretrial order. *See Serritella v. Markum*, 119 F.3d 506, 512-13 (7th Cir. 1997); *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 682-83 (7th Cir. 1990). The parties are encouraged to stipulate to or settle as many facts and issues as possible prior to trial.

**11)**    Local Rule 16.1(E)(6) provides that the parties must submit an agreed set of jury instructions. These agreed instructions will also be **due one week prior** to the final pretrial conference. If the parties cannot agree on a particular instruction, they must jointly submit a concise brief explaining the point of disagreement and offering each party's competing proposed instruction. The Court will not, unless absolutely necessary, write jury instructions for the parties, and they should not expect that it will do so; the Court will, however, review the briefs concerning the disputed instructions and give guidance as to the legal questions presented. Further, any evidentiary motions *in limine* and *Daubert* motions will be due on the date of the final pretrial conference and responses thereto will be due on September 18, 2017.

**12)**    Except as otherwise directed in this Order, the parties SHALL comply with the Local Rules, particularly Rule 16.1, as they prepare for final pretrial conference and trial. Parties are also directed to review and comply with this Court's standing order regarding conduct before and during trial available here: http://www.ilcd.uscourts.gov/sites/ilcd/files/local_rules/McDade_Courtroom_Rules_0.pdf.

So Ordered.

Entered this <u>28th</u> day of August, 2017.


s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
